[Cite as *State v. Thompkins*, 2024-Ohio-4927.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 22CA11 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| CORNELL DEMETRIUS THOMPKINS, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 10/03/2024** |

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for appellant.

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Jayme Hartley Fountain, Assistant Pickaway County Prosecutor, Circleville, Ohio, for appellee.

Wilkin, J.

{¶1} This is an appeal from a Pickaway County Court of Common Pleas judgment of conviction in which the jury found appellant, Cornell Demetrius Thompkins, guilty of aggravated trafficking in drugs with the additional specification that the amount of methamphetamine was equal to or greater than 100 times the bulk amount. The trial court imposed the statutorily mandated prison term of a minimum of 11 years and a maximum of 16.5 years. Thompkins presents five assignments of error challenging the trial court's denial of his motions to continue trial and suppress evidence, the effective representation of his trial counsel, and his sentence.

{¶2} In the first assignment of error, Thompkins asserts the trial court erred in denying his motion to continue trial. Thompkins filed his motion the

morning of trial asking for the continuance in order to provide newly-retained counsel time to get familiar with the case. We overrule the assignment of error and find no abuse of discretion by the trial court's decision denying the last-minute filing of the motion to continue. At trial, Thompkins was represented by his court-appointed counsel whom Thompkins had no conflict with and who was prepared to proceed with trial.

{¶3} In the second assignment of error, Thompkins contends the trial court erred in denying his motion to suppress the evidence claiming the trial court applied the wrong standard. According to Thompkins, the trial court denied his motion based solely on the "car length rule" in finding Thompkins was driving too closely to the motorcycle ahead of him, which in turn gave reasonable suspicion to initiate the traffic stop. Based on our de novo review, we find no error in denying Thompkins' motion to suppress. The traffic violation was observed by Trooper Spencer Large and recorded on the dash-camera video. Trooper Large testified that Thompkins was not driving within a safe distance of the motorcycle based on the speed of the vehicles, the motorcycles' ability to stop at a quicker rate than Thompkins' vehicle, and the distance between them. Thus, we find there was reasonable articulable suspicion to initiate a traffic stop.

{¶4} Thompkins presents several arguments within the third assignment of error in which he claims he received ineffective assistance of trial counsel. We overrule the arguments as Thompkins' assertions are not supported by the record of the case, are speculative, and he fails to demonstrate he was prejudiced by his counsel's trial strategies.

{¶5} In the fourth assignment of error, Thompkins claims the trial court's sentence of a minimum prison term of 11 years was greater than the sentence he would have received if he pleaded guilty. Thus, he maintains he received a "trial tax" for exercising his right to a jury trial. We overrule this assignment of error. First, the record before us does not include any information regarding a plea offered by the State. Second, based on Thompkins' conviction of aggravated trafficking in drugs with the specification that the methamphetamine was greater than 100 times the bulk amount, the trial court had no discretion as to what sentence to impose. The statutory sentencing provisions, R.C. 2929.14(A)(1)(a) and R.C. 2929.25(c)(1)(f), mandate a minimum prison term of 11 years. Therefore, Thompkins' 11-year prison sentence was nondiscretionary.

{¶6} Finally, Thompkins challenges his indefinite sentence under the Reagan Tokes Act claiming it violates the separation-of-powers doctrine, his right to a jury trial, and his right to due process. These challenges have been rejected by the Supreme Court of Ohio in *State v. Hacker*, 2023-Ohio-2535. Accordingly, we overrule Thompkins' fifth assignment of error and affirm his judgment of conviction.

FACTS AND PROCEDURAL BACKGROUND

{¶7} On July 25, 2021, Trooper Spencer Large was assigned to the Circleville post in Pickaway County, and was patrolling U.S. Route 23. While parked on the South side of U.S. 23, Trooper Large observed Thompkins' vehicle driving within two to three car lengths behind a motorcycle. Trooper Large concluded that Thompkins' vehicle was driving too closely to the motorcycle.

{¶8} This conclusion was based on Trooper Large's training and his observations. Trooper Large at the time of his observations was a patrol trooper for over nine years and was trained on estimating the speed of vehicles and the travel distance per second between vehicles. The training also included the minimum distance required between vehicles, in car lengths, to ensure they are not violating the "space between moving vehicles" traffic law.

{¶9} In explaining his observations, Trooper Large testified that the speed limit in the stretch of U.S. 23 he was patrolling is 60 miles per hour. And based on the car length training, one car length per ten miles per hour, Thompkins' vehicle should have been behind the motorcycle a minimum of six car lengths. But Thompkins was only two to three car lengths behind the motorcycle. This was hazardous since the motorcycle can come to a stop faster than a vehicle, thus, the distance was insufficient to reduce the risk of a rear-end accident and in violation of the traffic law of minimum space between moving vehicles.

{¶10} Consequently, Trooper Large initiated a traffic stop of Thompkins' vehicle. Thompkins was driving the vehicle but could not provide the trooper with a driver's license or any identification. The trooper requested his name and date of birth to check his identity. Thompkins, who is from Michigan, provided the trooper with his brother's information instead, and it was not until 50 minutes after initiating the stop that Thompkins provided the trooper with the correct identification.

{¶11} After the arrival of another trooper, Trooper Large removed the passenger Kalce Wilson ("K. Wilson"), two minor children and a pet, before

searching the vehicle. The vehicle was searched because Trooper Large smelled burnt and raw marijuana at the initial encounter and observed raw marijuana scattered over the front passenger seat. In the glove box, there was a clear baggie of marijuana, and in the trunk, in a locked duffle bag, there were several vacuum sealed bags of marijuana and methamphetamine. The total weight of the methamphetamine was approximately 6 pounds, 2,654 grams to be exact, which is valued on the street over $270,000.

{¶12} The passenger, K. Wilson, testified on behalf of Thompkins at trial. She testified that the vehicle Thompkins was driving was rented by her babysitter, Ronald Brown. She borrowed the car from Brown because she needed it to drive to West Virginia for a cousin's baby shower. K. Wilson could not rent a vehicle in her name because she does not have a driver's license. K. Wilson's cousin, Lakisha Wilson, was supposed to be the driver to West Virginia, but she backed out at the last minute. Thompkins then agreed to drive K. Wilson and their children to the baby shower. But before picking up Thompkins from his job site, K. Wilson went and picked up the rental car from Brown and it was at this point, that Brown asked if she would take the duffle bag with her. She told Brown yes, and Brown placed the duffle bag in the trunk of the vehicle. K. Wilson testified that she was not aware of the contents of the duffle bag or even that it was locked. Moreover, she insisted that Thompkins had no knowledge of the bag even being in the trunk of the vehicle.

{¶13} The jury found Thompkins guilty of trafficking in drugs with the additional specification that the amount of "methamphetamine involved was

equal to or more than one hundred (100) times the bulk amount." The trial court

proceeded to sentencing after the verdict was announced and imposed the

nondiscretionary sentence of a minimum of 11 years to a maximum of 16.5 years

in prison.

{¶14} It is from this judgment of conviction entry that Thompkins appeals.

## ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN
        IT DENIED DEFENDANT A CONTINUANCE OF HIS JURY TRIAL
        IN ORDER FOR RETAINED COUNSEL OF RECORD TO FILE A
        NEW MOTION TO SUPPRESS, TO OBTAIN
        DNA/FINGERPRINTS AND TO SUBPOENA TO TRIAL MATERIAL
        WITNESSES.

II.     THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN
        IT OVERRULED DEFENDANT'S MOTION TO SUPPRESS
        BASED UPON A FINDING THAT DEFENDANT WAS
        FOLLOWING TOO CLOSE.

III.    DEFENDANT'S TRIAL COUNSEL WAS INCOMPETENT AND HIS
        INCOMPETENCY AFFECTED THE OUTCOME OF THE CASE.

IV.     DEFENDANT SUFFERED A TRIAL TAX BY GOING TO TRIAL.

V.      THE COURT COMMITTED JUDICIAL ERROR WHEN IT
        IMPOSED A TAIL OF 5.5 YEARS.

## ASSIGNMENT OF ERROR I

{¶15} In the first assignment of error, Thompkins argues the trial court

erred when it denied his motion to continue his trial. Thompkins maintains that

retained counsel was not paid until the day of trial, and thus, could not make his

appearance until then. Pursuant to *Thurston v. Maxwell,* Thompkins asserts that

the motion to continue should have been granted as retained counsel was

present on the first day of trial and he was Thompkins' counsel of choice.  3 Ohio
St.2d 92 (1965).  The request was not part of a tactical delay.

{¶16} According to Thompkins, the denial of the motion to continue
deprived him of the opportunity to have his counsel of choice file a motion to
suppress the opening of the locked duffle bag, to obtain an expert witness to
challenge the DNA and fingerprints on the duffle bag, and to subpoena witnesses
that would have corroborated Thompkins' claim that he was used as a dupe.  All
this would have "bolstered his defense by giving credence to each and every
otherwise adverse fact."

{¶17} In response, the State asserts that the trial court did not abuse its
discretion in denying Thompkins' motion for a continuance.  Thompkins did not
inform the trial court that he was dissatisfied with his court-appointed attorney or
that he wanted to retain his own counsel.  Nothing was said on the record.  The
State brings to our attention an in-chambers discussion in which the State claims
the trial court was informed that defendant was satisfied with his court-appointed
counsel, and counsel indicated he was ready to proceed with trial.[1]

Law and Analysis

{¶18} "The determination whether to grant a continuance is entrusted to
the broad discretion of the trial court."  *State v. Froman*, 2020-Ohio-4523, ¶ 91,
citing *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus.  Thus, we will not
reverse a trial court's decision unless Thompkins demonstrates the trial court
abused its discretion.  *See State v. Myers*, 2018-Ohio-1903, ¶ 92.  "An abuse of

---

[1] The in-chambers discussion is not part of the record as it was not recorded, *see* App.R. 9(A), and Thompkins did not file a statement of proceedings pursuant to App.R. 9(C).

discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *State v. Ables*, 2012-Ohio-3377, ¶ 9 (4th Dist.), citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). Moreover, Thompkins "must show how the denial of a continuance prejudiced him." *Myers* at ¶ 92, citing *State v. Broom*, 40 Ohio St.3d 277, 288 (1988).

{¶19} In considering whether to grant a motion to continue the trial, the relevant factors to consider by the trial court "include the length of the delay requested, whether there had been prior continuances, inconvenience, and the reasons for the delay." *Froman* at ¶ 91, citing *State v. Landrum*, 53 Ohio St.3d 107, 115 (1990).

{¶20} Thompkins does not contend that the trial court failed to consider the relevant factors as stated above, or that it abused its discretion in denying the motion for continuance. Rather, Thompkins maintains that pursuant to *Thurston*, the continuance should have been granted in order for him to retain his counsel of choice whom in his opinion was going to present a better defense than appointed counsel. 3 Ohio St.2d 92 (1965). In essence, Thompkins claims the trial court erred when it denied his motion to substitute counsel.

{¶21} The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. In *Thurston*, the Supreme Court of Ohio held that "[t]he right of an accused to select his own counsel is inherent only in those cases wherein such accused is employing the counsel himself. The right to have counsel assigned by the court does not impose a duty on the court to allow the

accused to choose his own counsel; the selection is within the discretion of the court.  23 C.J.S. Criminal Law § 982(5), p. 962."  3 Ohio St.2d at 92.

**{¶22}** Decades later, the United States Supreme Court held that "[w]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Wheat v. United States,* 486 U.S. 153, 159 (1988).  Then in 2006, the United States Supreme Court expanded that "[w]e have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.  The court has, moreover, an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.' "  (Cleaned up.)  *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006), quoting *Wheat* at 160.

**{¶23}** Accordingly, the " 'important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court.' "  *State v.* Cobb, 2005-Ohio-1974, ¶ 32 (4th Dist.), quoting *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988).

**{¶24}** In *State v. Tingler*, we applied these legal principles and overruled Tingler's argument that the trial court abused its discretion in denying his motion

to substitute counsel.  2022-Ohio-3792, ¶ 28 (4th Dist.).  In rejecting the

argument, we outlined that the:

> [f]actors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996). In addition, courts should "balanc[e] * * * the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Id.; State v. Jones,* 91 Ohio St.3d 335, 342-43, 744 N.E.2d 1163 (2001).
>           Generally, a defendant bears the burden to demonstrate that substitute counsel is warranted. *State v. Carter*, 128 Ohio App.3d 419, 423, 715 N.E.2d 223 (4th Dist.1998).

*Id.* at ¶ 18, 19.

**{¶25}** And in *State v. Cobb*, we overruled Cobb's argument that the trial

court erred when it denied his request for a continuance "to enable privately

retained counsel to substitute for appointed counsel[.]"  2007-Ohio-1885, ¶ 1 (4th

Dist.).  Cobb filed a motion for substitution of counsel on the morning of trial.  *Id.*

at ¶ 5.  We affirmed the trial court's decision because Cobb's motion was

untimely, a continuance would have inconvenienced the witnesses, opposing

counsel, and the court.  *Id.* at ¶ 15, 16.  Additionally, the "trial court could have

reasonably decided that appellant's untimely request for a continuance did not

outweigh the court's authority to control its own docket."  *Id.* at ¶ 17.  Moreover,

there was nothing in the record indicating Cobb had a conflict with his appointed

counsel or that his financial situation has changed since being appointed

counsel.  *Id.* at ¶ 18-20.

{¶26} Similarly in the case at bar, Thompkins' motion was untimely, was an inconvenience to counsels, the witnesses, the court and the summoned jury. Moreover, there is nothing in the record to demonstrate there was a conflict between Thompkins and his appointed counsel who was familiar with the case and prepared to proceed with trial.

{¶27} Thompkins filed his motions for a continuance and substitution of counsel the morning of trial, March 10, a date that was set back in February and had previously been continued at his request. Further, Thompkins fails to present any argument that his relationship with his court-appointed counsel broke down, let alone demonstrate a breakdown that jeopardized Thompkins' right to effective counsel.[2]

{¶28} The record reveals that Thompkins' court-appointed counsel, Joshua Hall, began representing Thompkins while his case was pending in the municipal court and prior to the indictment being filed. This occurred on July 29, 2021. But then on August 6, 2021, retained counsel, Matthew O'Leary, filed an appearance after Thompkins' indictment was filed. Retained counsel on August 10, 2021, requested a continuance of the arraignment that was scheduled for August 11, due to a scheduling conflict. The trial court granted the motion. A second motion for a continuance was filed on September 23, 2021, by Thompkins' counsel, which the trial court also granted. Retained counsel, on October 26, 2021, filed a motion to withdraw as counsel for Thompkins "for the

---

[2] In his third assignment of error, Thompkins asserts his appointed trial counsel was ineffective, among other arguments, for failing to challenge the constitutionality of opening the locked duffle bag, obtaining an expert witness, and calling more witnesses. As discussed further under that assignment of error, Thompkins' claims are without merit.

reason that the attorney/client relationship has been terminated."  The trial court granted the motion "for good cause shown" and assigned the previously appointed attorney, Joshua Hall, on the case.

**{¶29}** At the hearing on December 15, 2021, appointed counsel requested a third continuance of the trial that was initially scheduled for January 20, 2022, which the trial court granted.  Appointed counsel then filed a motion to suppress the drugs found in the vehicle challenging the constitutionality of the traffic stop.  A hearing was held on the motion, and then on February 14, 2022, the trial court denied the motion to suppress and scheduled trial for March 10, 2022.

**{¶30}** On the morning of trial, newly retained counsel, James R. Kingsley, filed two motions: a "notice of conditional substitution of counsel" and a motion for continuance.  In the first motion, retained counsel conditioned the motion to be substituted as counsel for Thompkins on the trial court granting the motion for continuance.  In support of the motion for continuance, counsel stated that he was initially contacted to represent Thompkins back in September 2021, but it took Thompkins and his family time to obtain the retainer funds.  It was not until March 7, 2022, when counsel received his full retainer.  Then on March 9, 2022, after retrieving the pleadings from the clerk's office, counsel discovered trial was scheduled for March 10.  Counsel requested a continuance of 30 days and emphasized that Thompkins is entitled to representation with counsel of his choice.

**{¶31}** Thompkins' counsel further asserted in the motion that there is no harm in continuing the case as the only harm is to the potential jury who was

asked to come to court today – thus just the cost of the jury pool. Moreover, Thompkins with the assistance of retained counsel wanted to challenge the denial of his motion to suppress claiming the trial court applied the wrong standard of law when it denied the motion as it applied reasonable suspicion but it should have been probable cause. Also, there was no motion filed to suppress the evidence obtained from the opening of the locked duffle bag. The motion should have been filed as the opening of the bag violated Thompkins' constitutional rights. As such, "[t]he prejudice to the Defendant is great and should not be overcome by the inconvenience to the Court and the jurors."

{¶32} The trial court denied the fourth motion for continuance concluding that

> [t]his case has been pending since defendant's arrest on July 25, 2021. Defendant has been incarcerated since that date in lieu of bond. Defendant is now on his second attorney, Joshua Hall, who indicates he is prepared for trial today, **March 10, 2022.** This case has been pending in this Court since indictment on August 5, 2021. This is the only jury trial scheduled for trial this date. A jury has been summoned for only this case. Notice of trial was given to both sides by this Court on February 14, 2022. The fact that defendant has apparently decided to once again retain private counsel, this time James R. Kingsley, on the eve of trial is defendant's choice; but does not justify another continuance. (Emphasis in original.)

{¶33} Based on the record, we find the trial court did not abuse its discretion in denying Thompkins' fourth motion for continuance and his motion for substitution of counsel that were filed the morning of trial. *See Froman*, 2020-Ohio-4523, at ¶ 93 ("By the time that Froman made the request, the venire had already been summoned and a continuance could have delayed the beginning of the trial. Further, at least two lengthy defense-requested delays had already

been granted, and another lengthy delay was granted after Froman filed a pro se

motion to remove his counsel and new counsel were appointed.")

{¶34} In the matter at bar:

- Thompkins' motions were untimely;
- Thompkins was previously granted three continuances;
- Thompkins previously had retained counsel who withdrew from the case;
- The jury was summoned for Thompkins' trial;
- Witnesses were present for trial;
- Appointed counsel and the State were ready to proceed;
- Thompkins failed to demonstrate there was a conflict with appointed counsel;
- Thompkins fails to challenge the adequacy of the trial court's inquiry into the filing of his motions; and
- Thompkins' case has been pending for more than seven months.

{¶35} Furthermore, Thompkins fails to demonstrate he was prejudiced by

the trial court's denial of his motions.  Appointed counsel was familiar with the

case, was prepared to proceed, questioned the State's witnesses, and presented

the testimony of Thompkins' passenger, who testified the drugs did not belong to

Thompkins.  And, as discussed in the third assignment of error, Thompkins'

challenges as to the effective assistance of his appointed trial counsel lack merit.

{¶36} Accordingly, we affirm the trial court's decision and overrule

Thompkins' first assignment of error.

## ASSIGNMENT OF ERROR II

{¶37} In the second assignment of error, Thompkins asserts that the "car

length rule" can provide a reasonable, articulable suspicion to stop a vehicle,

however, it is not the golden standard.  And in this case, the trial court overruled

Thompkins' motion to suppress solely based on the car length rule which

according to Thompkins was improper.  Thompkins requests that we adopt the

holdings in *State v. Bui*, 2021-Ohio-362 (6th Dist.), and *State v. Hampton*, 2022-

Ohio-1380 (1st Dist.), in which he claims the Sixth and the First District Court of

Appeals rejected the "car length rule" as being the sole basis for determining

whether a vehicle is travelling too closely to another vehicle.

{¶38} Thompkins maintains that Trooper Large "only assumed" that he

was travelling 60 miles an hour and failed to articulate with specificity that

Thompkins was following the motorcycle in an unreasonable manner.

Thompkins contends that the stopping distance chart applies to stopping against

a stationary object, but that was not the case here.  The motorcycle was moving

and so the reaction time of that should be considered.  Thus, Thompkins asserts

that Trooper Large improperly "solely relied upon the one car length for every 10

miles per hour" and this demonstrates a lack of reasonable and articulable

suspicion to constitutionally validate the traffic stop.

{¶39} In response, the State argues the trial court properly concluded that

there was probable cause for the traffic stop based on Trooper Large's testimony

of his observations and in relation to his training.  The trial court viewed the dash-

camera video and observed that only one second lapsed between Thompkins'

vehicle and the motorcycle being in frame of view.  Furthermore, Trooper Large's

testimony was reliable as to what a reasonable and prudent distance should be

at the speed Thompkins' vehicle and the motorcycle were traveling.  Thus, the

State asserts that the trial court's decision should be affirmed and Thompkins'

assignment of error should be overruled.

Law and Analysis

**{¶40}** Appellate review of a motion to suppress presents a mixed question

of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

*Id.*

**{¶41}** " 'An officer's temporary detention of an individual during a traffic

stop constitutes a seizure of a person within the meaning of the Fourth

Amendment.' " *State v. Gurley*, 2015-Ohio-5361, ¶ 20 (4th Dist.), quoting *State*

*v. Lewis*, 2008-Ohio-6691, ¶ 14 (4th Dist.). The Fourth Amendment of the United

States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A traffic stop is constitutionally valid "if an officer has a reasonable and articulable

suspicion that a motorist has committed, is committing, or is about to commit a

crime." *State v. Mays*, 2008-Ohio-4539, ¶ 7, citing *Delaware v. Prouse*, 440 U.S.

648, 663 (1979).

**{¶42}** Probable cause "is a stricter standard than reasonable and articulable suspicion" and "is a complete justification for a traffic stop[.]" *Id.* at ¶ 23, citing *State v. Evans*, 67 Ohio St.3d 405, 411 (1993). The Supreme Court of Ohio held that

> [p]robable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " (Brackets added in *Gerstein*.) *Gerstein v. Pugh*, 420 U.S. 103, 111-112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), quoting *Beck* at 91, 85 S.Ct. 223.

*State v. Jordan*, 2021-Ohio-3922, ¶ 19.

**{¶43}** "A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws." *State v. Guseman*, 2009-Ohio-952, ¶ 20 (4th Dist.), citing *State v. Bowie*, 2002-Ohio-3553 (4th Dist.). In the case at bar, Thompkins was observed violating R.C. 4511.34(A), which requires drivers to operate their vehicles within a safe distance of the vehicle ahead of them:

> The operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.

**{¶44}** "[T]he purpose of the 'reasonable and prudent' standard is to 'prevent rear-end collisions.' " *State v. Johnson*, 2023-Ohio-2979, ¶ 21 (6th Dist.), quoting *State v. Gonzalez*, 43 Ohio App.3d 59, 61 (6th Dist. 1987). " 'Whether a person could stop in time to avoid a rear-end collision is thus the important issue.' " *Id.*, quoting *Gonzalez* at 61.

**{¶45}** The trial court in rejecting Thompkins' motion to suppress, made the following factual conclusions:

Trooper Large testified that Defendant's vehicle was approximately 2-3 car lengths behind the motorcycle. The incident was recorded on the patrol car's dashcam. The video shows that the motorcycle enters the right-side frame of the dashcam at thirty-seven (37) seconds into the video and that Defendant's vehicle enters on the right-side frame of the dashcam at thirty-eight (38) seconds into the vehicle, only one second later. Based upon the evidence presented, the Court finds that Trooper Large properly executed a traffic stop due to defendant following too closely.

**{¶46}** We similarly reviewed the dash-camera video and it supports the trial court's factual conclusions. Within the dash-camera's narrow field of view, with the camera pointed at the street, we can solely observe one complete white-dashed line separating the left and right lanes. At the time frame of 37 seconds, from the right side view of the camera, we observe the motorcycle come into frame from the right lane. Within one second, the motorcycle is on the other side of the camera's field of view and out of frame. As soon as the motorcycle is out of frame, Thompkins' vehicle can be seen on the same right lane of travel behind the motorcycle.

**{¶47}** Trooper Large testified as to the same observations the evening of July 25, 2021. As part of Trooper Large's training, he is instructed on determining the different speeds of vehicles and also the travel distances and separation between vehicles. This is a 60-mile-per-hour road, thus, at a minimum, the vehicles should be further than six car-lengths apart. On that day, as he was parked on the shoulder of U.S. 23, he observed Thompkins' vehicle was only two to three car-lengths behind the motorcycle. This was concerning, as motorcycles weigh less than vehicles and "have a large caliber braking system so they can slow down much faster than a larger vehicle." Thus, when

Thompkins' vehicle passed by, Trooper Large pulled out and initiated a traffic stop.

{¶48} Trooper Large's testimony and the video demonstrate that Thompkins was driving too closely to the motorcycle in an unreasonable manner. As such, Trooper Large had reasonable suspicion of a traffic violation to initiate a traffic stop. Our conclusion is consistent with our prior decision in *State v. Payne*, 2012-Ohio-4696 (4th Dist.). In *Payne*, we affirmed the trial court's denial of Payne's motion to suppress finding the trooper had reasonable and articulable suspicion of Payne following another vehicle too closely based on the trooper's training and observation of an inadequate car-length separation between Payne's vehicle and the vehicle ahead of him:

> Here, Trooper Wilson testified that he observed Appellant in the right-hand lane of U.S. 35, traveling approximately three car lengths behind another vehicle at a rate of 56 miles per hour. He alluded to his formal training for calculating a "following too close" violation and testified that he relied on the "rule of thumb" regarding "one car length for every ten miles per hour." Trooper Wilson also testified as to his opinion that it would be difficult to avoid a collision under the conditions Appellant was traveling. Finally, Trooper Wilson testified as to his training at the highway patrol academy and his experience as a road trooper since 2004. . . . Based on Trooper Wilson's testimony as to the totality of the circumstances, we agree that the trial court correctly found a reasonable articulable basis for Trooper Wilson to stop Appellant for following too closely.

*Id.* at ¶ 24.

{¶49} The Sixth District Court of Appeals similarly upheld the constitutionality of a traffic stop finding credible the trooper's testimony of the car-length standard that assists in demonstrating whether a vehicle is driving too closely:

Archer testified that he observed the rental vehicle traveling at 68 miles per hour, and that the approximately 16-foot rental vehicle was only two to three car lengths, or less than 50 feet, behind the semi-trailer in front of it. This, despite the fact that the left lane was wide open and available for use. Using a calculation learned as part of his crash reconstruction training, the trooper explained that, even on a dry day, there should have been no less than 363.604 feet between the vehicles. Thus, at appellant's speed, the rental vehicle should have been approximately 23 car lengths behind the truck. The evidence adduced at the hearing supports the conclusion that Archer possessed at least reasonable suspicion that that the vehicle was driven in violation of R.C. 4511.34.

*Johnson*, 2023-Ohio-2979, at ¶ 22 (6th Dist.).

**{¶50}** Thompkins maintains that the Sixth District Court of Appeals'

decision in *Bui*, 2021-Ohio-362 (6th Dist.), and the First District Court of Appeals'

decision in *Hampton*, 2022-Ohio-1380 (1st Dist.), require a heightened standard

in demonstrating whether a vehicle is traveling too closely to another vehicle.

And, under this heightened standard, Trooper Large's traffic stop would not be

supported by reasonable suspicion of a traffic violation.  We disagree.

**{¶51}** The Sixth District in *Bui* reversed the trial court's decision denying

Bui's motion to suppress because the trial court applied the wrong standard in

analyzing whether the traffic stop was constitutional.  *Bui* at ¶ 42.  The Sixth

District had issue with the trooper initiating a traffic stop "only based [on the

trooper's] opinion that appellant was following too closely due to car length."  *Id.*

at ¶ 35.  There was no additional evidence, thus, the Sixth District held that

the evidence failed to establish that appellant was following the truck more closely than was reasonable and prudent, having due regard for the speed of such vehicle, the traffic and the condition of the highway. Moreover, we conclude Trooper Archer lacked reasonable and articulable suspicion or probable cause to believe a violation of R.C. 4511.34 occurred, as to justify the traffic stop.

*Id.* at ¶ 42.

**{¶52}** In *Hampton*, the First District affirmed the trial court's decision to grant Hampton's motion to suppress concluding that there was no probable cause for the traffic stop because the evidence did not demonstrate Hampton was driving too closely to the vehicle in front of him. *Id.* at ¶ 13, 15. In reaching this conclusion, the First District stated that

> [e]stablishing probable cause for a violation of R.C. 4511.34 required the state to prove not that Mr. Hampton followed the cars in front of him at a distance of less than five and a half car lengths, but that he followed more closely than was reasonable and prudent in light of the speed of the vehicles, the flow of traffic, and the condition of the highway. *See State v. Woods*, 2018-Ohio-3379, 117 N.E.3d 1017, ¶ 18 (5th Dist.)

*Id.* at ¶ 12.

**{¶53}** Contrary to Thompkins' assertions, the decisions in *Bui* and *Hampton* do not support his position. We first note that *Johnson*, a case that supports our holding here, was decided by the Sixth District after the decision in *Bui*. Second, in the case at bar, Trooper Large initiated the traffic stop not simply because of the insufficient car-length distance between Thompkins and the motorcycle, but also because of the two to three car length distance in a 60-mile-per-hour street was unreasonable since a motorcycle is capable of breaking and stopping more quickly than a vehicle. Thus, the likelihood of Thompkins rear-ending the motorcycle was more likely than reasonable and prudent. "[A]n officer is not required to prove the suspect committed an offense beyond a reasonable doubt or even satisfy the lesser standard of probable cause to believe the

defendant violated the law." *State v. Garcia*, 2023-Ohio-2346, ¶ 56 (5th Dist.),

citing *Westlake v. Kaplysh*, 118 Ohio App.3d 18, 20 (8th Dist. 1997).

{¶54} Based upon the totality-of-the-circumstances, Trooper Large had

reasonable and articulable suspicion to initiate a traffic stop based on his training

and Thompkins being within one second of the motorcycle in a 60-mile-per-hour

street and less than the reasonable and prudent distance of 6 car lengths.

{¶55} Wherefore, Thompkins' second assignment of error is overruled and

the trial court's decision denying his motion to suppress is affirmed.

ASSIGNMENT OF ERROR III

{¶56} In the third assignment of error, Thompkins argues his trial counsel

was ineffective on several grounds.  First, Thompkins maintains his counsel was

ineffective for failing to challenge the constitutionality of opening the locked

duffle bag found in the trunk of the vehicle.  According to Thompkins, he did not

consent to the search, the search was not part of an inventory search, and there

was no probable cause to support opening the duffle bag.  Thompkins cites to

*State v. Farris*, 2006-Ohio-3255, for the position that the odor of marijuana is not

sufficient to search the trunk of the vehicle without a warrant.  And here, "[t]here

is no allegation that the officer smelled raw marijuana in the locked duffle bag.

Therefore, when he broke open the zipper, it was in violation of the Ohio

Constitution."  Thus, his trial counsel was ineffective for failing to file a motion to

suppress the drugs found in the duffle bag.

{¶57} Thompkins next contends that his trial counsel was ineffective for

failing to request a DNA and/or fingerprints expert to examine the duffle bag.

Counsel's failure to hire an expert was prejudicial because the expert would have discovered, through testing, that the duffle bag belonged to someone else.

{¶58} Thompkins next argues "he was offered a plea bargain of seven years after the motion to suppress. . . . He was not informed that he could plea 'no contest', be sentenced to seven years and still appeal."  Thompkins maintains "the failure to advise a defendant of a plea bargain is incompetent counsel[.]"

{¶59} In the fourth argument, Thompkins contends his trial counsel was ineffective for failing to inquire during voir dire of any racial prejudice the jury may have, because Thompkins is a black male and the jury selected was all white. Thus, this was not a tactical decision as racial prejudice exists.  Additionally, Thompkins asserts his trial counsel failed to inquire of the jurors about their view of him electing not to testify at trial.  According to Thompkins, the trial court's two-line statement that Thompkins has a constitutional right not to testify was insufficient and his trial counsel should have inquired further.  This, Thompkins asserts, was prejudicial and not a proper trial tactic.

{¶60} Finally, Thompkins contends his trial counsel was ineffective for failing to call several witnesses including Tierra, Lakisha Wilson, Darius Brown, and Ronald Brown.  These four witnesses, Thompkins contends, would have testified that he was heading to a baby shower, that the vehicle he was driving was a rental car, that Lakisha was supposed to be the driver but backed out at the last minute, and that Darius Brooks was the person who placed the duffle bag in the vehicle to be delivered by K. Wilson.  And even if the owner of the duffle

bag took the Fifth Amendment on the stand, the fact that he exists would have been crucial to Thompkins' defense.

{¶61} Thompkins maintains these witnesses were material and it was prejudicial for his trial counsel not to call them since it would have rebutted Trooper Large's testimony that he was surprised that they were traveling with clothes since normally drug traffickers travel light and with no identification. Further, it was crucial to establish there was a baby shower Thompkins was going to and the vehicle was a rental borrowed from the babysitter.

{¶62} In response, the State asserts that Thompkins cannot meet the burden required to establish an ineffective assistance of counsel claim. Thompkins' trial counsel filed a motion to suppress based on what he believed were good claims and he subpoenaed witnesses that he considered were necessary. Further, Thompkins at trial did not assert he was dissatisfied with his trial counsel.

Law and Analysis

A. Standard of review

{¶63} To demonstrate ineffective assistance of counsel, Thompkins "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 2011-Ohio-3641, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1988), paragraph two of the syllabus. Failure to demonstrate either

prong of this test "is fatal to the claim." *State v. Jones,* 2008-Ohio-968, ¶ 14 (4th Dist.), citing *Strickland.*

**{¶64}** Thompkins "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299 (1965). "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance." *Id.*, citing *State v. Davis*, 133 Ohio App.3d 511, 513 (8th Dist. 1999). To demonstrate prejudice, Thompkins "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

### B. Motion to suppress – duffle bag

**{¶65}** Thompkins maintains that his trial counsel was ineffective for failing to file a motion to suppress the methamphetamine that was located inside the locked duffle bag. The bag was in the trunk of the vehicle and was searched at the traffic stop without the trooper obtaining a search warrant.

**{¶66}** Thompkins' argument fails. Counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Walters*, 2013-Ohio-772, ¶ 20 (4th Dist.), citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). And in the matter at bar, Thompkins cannot demonstrate prejudice as "the failure to file a motion to suppress amounts to ineffective assistance of

counsel only when the record demonstrates that the motion would have been successful if made." *Id.* citing *State v. Resendiz*, 2009-Ohio-6177, ¶ 29 (12th Dist.).

{¶67} Thompkins relies on the Supreme Court of Ohio's decision in *State v. Farris*, 2006-Ohio-3255, in his assertion that had counsel filed a motion to suppress, it would have been granted. We disagree and find the decision in *Farris* distinguishable. In *Farris*, the Supreme Court held:

> The odor of burnt marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. *United States v. Nielsen* (C.A.10, 1993), 9 F.3d 1487. No other factors justifying a search beyond the passenger compartment were present in this case. The officer detected only a light odor of marijuana, and the troopers found no other contraband within the passenger compartment.

*Farris* at ¶ 52.

{¶68} "The odor of *raw* marijuana provides different probable cause than the odor of *burnt* marijuana." (Emphasis sic.) *State v. Lynn*, 2018-Ohio-3335, ¶ 20 (12th Dist.), citing *State v. Gonzalez*, 2009-Ohio-168, ¶ 22 (8th Dist.). Accordingly, in *Lynn*, the Twelfth District Court of Appeals found permissible the search of the vehicle's trunk that was premised on the odor of raw marijuana emanating from the passenger's compartment. *Id.* The Sixth District Court of Appeals similarly held that "a search of a trunk is permissible under the automobile exception where the officer detects a strong odor of raw marijuana emanating from the vehicle." *State v. Donaldson*, 2019-Ohio-232, ¶ 26 (6th Dist.).

**{¶69}** More recently, we held that "[w]hen an officer detects a strong odor of raw marijuana emanating from the vehicle, the officer is justified in extending the search beyond the vehicle's passenger compartment to other areas of the vehicle." *State v. Farrow*, 2023-Ohio-682, ¶ 18 (4th Dist.).

**{¶70}** In the matter at bar, at the traffic stop, Trooper Large smelled the odor of burnt and raw marijuana, he observed raw marijuana scattered over the front passenger seat, and he located a baggie of marijuana in the glove box. This gave Trooper Large "probable cause to search the entire vehicle[,]" including the locked duffle bag in the trunk that reasonably could contain drugs. *State v. Etherson-Tabb*, 2024-Ohio-550, ¶ 25 (4th Dist.).

> "Under the automobile exception to the warrant requirement, officers may search a vehicle without obtaining a warrant when they have probable cause to believe the vehicle contains evidence of illegal activity." *State v. Jackson*, 171 Ohio St.3d 412, 2022-Ohio-4365, 218 N.E.3d 790, ¶ 28. " '[W]hen a police officer has probable cause to believe a vehicle contains evidence of a crime, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search.' " *Farrow*, 2023-Ohio-682, 209 N.E.3d 830, at ¶ 18, quoting *State v. Maddox*, 2021-Ohio-586, 168 N.E.3d 613, ¶ 20 (10th Dist.).

*Id.*

**{¶71}** Accordingly, Thompkins cannot demonstrate that the filing of a motion to suppress the methamphetamine found in the duffle bag would have been granted. We therefore overrule Thompkins' argument.

### C. DNA/fingerprints expert

**{¶72}** Under this argument, Thompkins maintains that his trial counsel was ineffective for failing to obtain an expert witness to test the DNA and/or

fingerprints on the duffle bag.  According to Thompkins, the testing would have revealed that another person's DNA and/or fingerprints were on the bag.  None of Thompkins' claims have merit.  His assertions are speculative and Thompkins fails to demonstrate prejudice.

**{¶73}** "Trial counsel's failure to request an expert is a debatable trial tactic that does not amount to ineffective assistance."  *State v. Knuff*, 2024-Ohio-902, ¶ 275, *reconsideration denied*, 2024-Ohio-1832, citing, *State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993).  Additionally, in the matter at bar, it is speculative that the results of any testing would have revealed another person's DNA and/or fingerprints on the locked duffle bag.  Finally, even if an expert was retained by Thompkins' trial counsel and the results established the presence of another person's DNA and/or fingerprints, Thompkins cannot demonstrate the outcome of the case would have been different.  Thompkins was in constructive possession of the methamphetamine in the locked duffle bag that was located in the trunk of the vehicle.  "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession."  *State v. Hankerson*, 70 Ohio St. 2d 87 (1982).

**{¶74}** The vehicle driven by Thompkins emanated the odor of burnt and raw marijuana.  And within Thompkins' view, there was raw marijuana scattered over the front passenger seat.  And Thompkins, as driver, was in possession of the vehicle's key which gave him access to the trunk of the vehicle where the duffle bag was located.  We have previously held that a defendant is in

constructive possession of drugs in a suitcase located in the trunk of the vehicle. *See State v. Anderson*, 2019-Ohio-395, ¶ 42 (4th Dist.). Therefore, Thompkins fails to meet his burden in demonstrating the outcome of the case would have been different if a DNA and/or fingerprints expert was retained by trial counsel.

**{¶75}** Accordingly, we overrule Thompkins' arguments.

### D. No contest plea

**{¶76}** Under this argument, Thompkins maintains that his trial counsel was ineffective for failing to inform him about the option to plead no contest and receive the State's offer of seven years in prison. This argument fails as it is not supported by the record of the case and is based on speculation. There is no mention of a plea offer by the State in the trial court record. And "if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal." *State v. Wilburn*, 2023-Ohio-4865, ¶ 42 (4th Dist.), citing *State v. Hartman*, 93 Ohio St.3d 274, 299 (2001).

**{¶77}** Moreover, "trial courts may reject plea agreements" and "they are not bound by a jointly recommended sentence." *State v. Underwood*, 2010-Ohio-1, ¶ 28. And Thompkins does not claim that the trial court would have accepted any jointly-recommended sentence. "[S]peculation is insufficient to establish ineffective assistance of counsel." *State v. Perez*, 2009-Ohio-6179, ¶ 217, citing *State v. Were*, 2008-Ohio-2762, ¶ 219. Wherefore, we overrule Thompkins' argument.

E.  Jury questioning

**{¶78}** Under this argument, Thompkins maintains his trial counsel was ineffective for failing to inquire during voir dire regarding any racial bias the jury may have, and, second, failing to question the jury about their opinion of Thompkins' election not to testify on his own behalf.

**{¶79}** " '[V]oir dire is largely a matter of strategy and tactics[.]' " *State v. Westbrook*, 2010-Ohio-2692, ¶ 30 (4th Dist.), quoting *State v. Keith,* 79 Ohio St.3d 514, 521 (1997), *certiorari denied*, 523 U.S. 1063 (1998).  Thus, "[t]rial counsel is given broad discretion in how to conduct voir dire and into what areas to inquire."  *State v. Taylor*, 1997 WL 769573, * 4 (6th Dist. Sept. 30, 1999).  This includes counsel's "judgment in questioning about prejudice or bias, an issue that could insult potential jurors."  *Id.*  Further, "[t]he conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked."  *State v. Evans*, 63 Ohio St. 3d 231, 247 (1992).  Thus, "[a] reviewing court should not substitute its judgment for that of trial counsel."  *Taylor* at * 4.

**{¶80}** In the matter at bar, Thompkins' trial counsel elected not to address Thompkins' race and, contrary to Thompkins' assertion, this was within counsel's realm of trial strategy.  The Supreme Court of Ohio overruled a similar argument in a capital case involving interracial murder in which the court emphasized the deference given to trial counsel's voir dire strategy:

> When a capital defendant is accused of interracial murder, defense counsel are "entitled to engage in racial-bias inquiry," but they are not required to do so. (Emphasis deleted.) *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 217-218. As we have explained, "the actual decision to question on racial prejudice is a choice best left to a capital defendant's counsel." *State*

> *v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 33. Counsel has to "weigh the risks inherent in interrogating prospective jurors on the sensitive question of racial prejudice." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 207.

*State v. Graham*, 2020-Ohio-6700, ¶ 48.

**{¶81}** Thompkins fails to demonstrate how his counsel's election not to question the jury venire of racial bias prejudiced him. Simply because the jury found Thompkins guilty is insufficient to demonstrate prejudice. *See State v. Morrow*, 1999 WL 42043, *2 (2d Dist. Dec. 18, 1998) ("A defendant who claims that his attorney was constitutionally ineffective must affirmatively demonstrate how he was prejudiced as a result. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Morrow complains of his counsel's failures, but has failed to demonstrate what prejudice resulted. Simply that he was convicted and sentenced is not enough.").

**{¶82}** Thompkins' second claim of trial counsel's failure to inquire of the jury's opinion of Thompkins' election not to testify also has no merit. Thompkins acknowledges that the trial court instructed the jury that Thompkins has the right not to testify but claims it was insufficient. The trial court instructed the jury as follows: "Now it is not necessary that the defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that he did not testify must not be considered for any purpose." It is well-established that "[a] jury is presumed to follow the instructions given to it by the trial judge." *State v. Loza*, 71 Ohio St. 3d 61, 75 (1994).

{¶83} Accordingly, Thompkins fails to demonstrate how his counsel's tactical decision of not further inquiring of the jury's point of view of his election not to testify prejudiced him. We, therefore, overrule Thompkins' arguments.

F. Other witnesses

{¶84} Under this argument, Thompkins maintains that his trial counsel was ineffective for failing to call other witnesses that would have corroborated K. Wilson's testimony of driving to West Virginia for a family event, that the vehicle was a rental in their babysitter's name, and that the duffle bag belonged to the babysitter.

{¶85} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001), citing *State v. Williams*, 74 Ohio App.3d 686, 695 (8th Dist. 1991). Thus, a defendant has the burden to demonstrate how the failure to call a witness prejudiced him. *Id.*

{¶86} In the matter at bar, Thompkins failed to proffer what Tierra, Lakisha, Darius and Ronald would have testified to. Thus, any conjecture of what their testimony will be is purely speculative. Furthermore, even if we accept Thompkins' summary of their prospective testimony, this information was already testified to by K. Wilson. Accordingly, Thompkins fails to meet his burden of establishing that the outcome of the case would have been different.

{¶87} The jury was informed through K. Wilson's testimony that she borrowed the vehicle from her babysitter and that it was a rental. She further testified that she met with the babysitter and agreed to deliver his duffle bag

which the babysitter placed in the trunk of the vehicle.  K. Wilson further stated

that Thompkins was not supposed to go with her, but due to her cousin backing

out, Thompkins at the last minute agreed to drive K. Wilson and their children to

West Virginia for a family event.  Moreover, K. Wilson was insistent that

Thompkins had no knowledge of the duffle bag that contained approximately

$270,000 worth of methamphetamine.

{¶88} As trier of fact, the jury is free to " 'believe or disbelieve any witness

and accept part of what a witness says and reject the rest.' "  *State v. McFarland*,

2020-Ohio-3343, ¶ 37, quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964).  And in

this case, the jury elected to disbelieve K. Wilson's testimony and found

Thompkins guilty of trafficking the methamphetamine.  Contrary to Thompkins'

assertion, this does not meet his burden of demonstrating prejudice.

{¶89} Accordingly, we overruled Thompkins' arguments.

ASSIGNMENT OF ERROR IV

{¶90} In the fourth assignment of error, Thompkins challenges his prison

sentence of 11 to 16.5 years.  Thompkins asserts that he was offered seven

years in prison as a plea bargain, which he rejected and exercised his right to a

jury trial.  Thompkins was then sentenced to a minimum prison term of 11 years.

He maintains that there was no reason he was sentenced to a greater sentence

than the seven years in prison he was offered.  As such, Thompkins claims he

was punished for exercising his right to a jury trial.

{¶91} In response, the State contends that Thompkins' sentence of a

minimum of 11 years and a maximum of 16.5 years is mandatory due to the

aggravated trafficking in drugs offense Thompkins was convicted of committing. The State explains that Thompkins "was offered, prior to trial, an opportunity to plead guilty to an amended count one of the indictment being Aggravated Trafficking in Drugs in violation of O.R.C. 2925.03(A)(2)/(C)(1)(e), and the State agreed to recommend a seven (7) year mandatory prison term. [Thompkins] rejected that plea offer, and thereafter proceeded to jury trial on the original indictment for Aggravated Trafficking in Drugs in violation of O.R.C. 2925.03(A)(2)/(C)(1)(f)." Thompkins' conviction under the indicted aggravated trafficking in drugs left no sentencing discretion to the trial court. The sentence of 11 to 16.5 years was statutorily mandatory.

Law and Analysis

{¶92} Thompkins is claiming he was subjected to an impermissible "trial tax" for being sentenced to a prison term longer than he was offered for electing to proceed to a jury trial. Thompkins fails to meet his burden in demonstrating any vindictiveness by the trial court. "[T]here is no presumption of vindictiveness when a defendant rejects a plea bargain and is subsequently sentenced to a harsher term." *State v. Rahab*, 2017-Ohio-1401, ¶ 3. And "only if, upon its examination of the entire record, it clearly and convincingly finds that the sentence was based on actual vindictiveness[,]" may a court of appeals reverse a sentence for vindictiveness. *Id.*

{¶93} We first observe that any plea offered by the State and rejected by Thompkins is not part of the record on appeal before us. As an appellate court, we are limited to what is reflected by the record on appeal. *See State v. Ishmail,*

54 Ohio St.2d 402, 406 (1978).  The record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court[.]"  App.R. 9(A)(1).

{¶94} In the matter at bar, there is no mention of a plea agreement in the transcript or a document filed in the docket indicating a plea was offered and rejected by Thompkins.  "[S]tatements in an appellate brief are not part of the trial record and thus cannot be considered on direct appeal."  *State v. Lowe*, 2001 WL 62798, *2 (2d Dist. Jan. 26, 2001), citing *Akro Plastics v. Drake Indus.*, 115 Ohio App.3d 221 (11th Dist. 1996).  Accordingly, there is no evidence before us to support Thompkins' assertions.

{¶95} Furthermore, Thompkins' sentence was nondiscretionary as he was convicted of aggravated trafficking in drugs pursuant to R.C. 2929.25(A)(2) with an amount greater than 100 times the bulk amount.  And pursuant to R.C. 2929.25(C)(1)(f):

> If the amount of the drug involved equals or exceeds one hundred times the bulk amount . . . aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

As a first-degree felony, the maximum prison term is 11 years.  *See* R.C. 2929.14(A)(1)(a).  Therefore, Thompkins' prison sentence of 11 years is not a "trial tax[.]"  Rather, it was a mandatory prison sentence.

{¶96} Wherefore, Thompkins' fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

{¶97} In his final assignment of error, Thompkins argues that R.C.
2967.271, the Reagan Tokes Act ("ACT"), is unconstitutional because it violates
separation of powers, his right to a jury trial, and due process.  Thompkins
acknowledges that this issue has already been rejected by the Supreme Court of
Ohio but is submitting it to preserve the issue for appeal.

{¶98} In response, the State presents two assertions.  First, Thompkins
failed to raise this issue at the trial court and thus, Thompkins waived the issue
and we should not consider it.  Second, even if we consider the issue, we
previously upheld the constitutionality of the ACT in *State v. Chapman*, 2022-
Ohio-2853 (4th Dist.).

Law and Analysis

{¶99} "[T]he question of the constitutionality of a statute must generally be
raised at the first opportunity and, in a criminal prosecution, this means in the trial
court."  *State v. Awan*, 22 Ohio St.3d 120, 122 (1986).  A reviewing court has the
"discretion to consider a forfeited constitutional challenge to a statute" and "may
review the trial court decision for plain error[.]"  *State v. Quarterman*, 2014-Ohio-
4034, ¶ 16.  "The burden of demonstrating plain error is on the party asserting it."
*Id.*  Thompkins failed to raise the constitutionality of the ACT's statutory provision
at trial, and similarly fails to present a plain error argument here on appeal.  We
decline to construct a plain error argument on behalf of Thompkins.  We note,
however, that even if Thompkins argued plain error, we would overrule his

constitutional challenge in which the Supreme Court of Ohio has rejected similar

arguments in *State v. Hacker*, 2023-Ohio-2535.

{¶100} In *Hacker*, the Supreme Court addressed three similar

constitutional challenges to the ACT: separation-of-powers doctrine, right to a

jury trial, and procedural due process.  *Id.* at ¶ 1.  The Supreme Court outlined

the application of the ACT which provides for an indefinite sentence for first-

degree and second-degree felony offenders in which life imprisonment is not an

available sentence.  *Id.* at ¶ 7.  The indefinite sentence has a minimum prison

term and a maximum prison term that are imposed at disposition by the trial

court.  *Id.*  The ACT presumes that a defendant will be released after completing

the minimum prison term, but that presumption can be rebutted by the

Department of Rehabilitation and Correction ("DRC").  *Id.* at ¶ 9.

{¶101} In rejecting the claim that the ACT violates the separation-of-

powers doctrine, the Supreme Court held:

> Once the trial court imposes minimum and maximum prison terms under R.C. 2929.14(A)(1)(a) or (2)(a), the sentence for the offender has been set. "[D]efendants who have been sentenced under the Reagan Tokes Law have received the entirety of their sentences and the sentences have been journalized." *State v. Maddox*, 168 Ohio St.3d 292, 2022-Ohio-764, 198 N.E.3d 797, ¶ 16. If the DRC determines that the presumption of release has been rebutted, it may maintain the offender's incarceration—but only within the bounds set by the trial court. It does not impede the court's exercise of its judicial powers.
> . . . Should the DRC determine that the presumption of release is rebutted as the result of an offender's behavior during his incarceration, the additional time that the offender may have to serve is limited by the sentence that has already been imposed by the trial court. R.C. 2967.271(D).
> . . .
> We conclude that allowing the DRC to rebut the presumption of release for disciplinary reasons does not exceed the power given

to the executive branch and does not interfere with the trial court's discretion when sentencing an offender. Therefore, we hold that the Reagan Tokes Law does not violate the separation-of-powers doctrine.

*Id.* at ¶ 16, 23, 25.

**{¶102}** The Supreme Court also rejected the argument that the ACT violates a defendant's right to a jury trial holding:

> But here, the "prescribed range of penalties" is determined upon the return of a guilty verdict—or, as in the cases before us, when the offender pleads guilty to the charged offenses. Once an offender is found guilty of an eligible offense, the trial court has the discretion to sentence him to any minimum sentence within the appropriate range. R.C. 2929.14(A)(1)(a) and (2)(a). And the maximum sentence is calculated based on that minimum sentence. *Id.*; R.C. 2929.144(B)(1). Because no determination by the DRC regarding Simmons's behavior while in prison will change the range of penalties prescribed by the legislature and imposed by the trial court, the right to a jury trial is not implicated.

*Hacker*, 2023-Ohio-2535, at ¶ 28.

**{¶103}** With regard to the procedural due process challenge, the Supreme Court first held that the presumption of release upon serving the minimum prison term "creates an interest that entitles offenders to due-process protection." *Id.* at ¶ 36. Accordingly, due process requires a hearing before an offender is deprived of that right. *Id.* at ¶ 37. And the "Reagan Tokes Law provides the offender with a hearing before his incarceration is maintained. So, it does not, by its terms, deprive an offender of 'notice and an opportunity to be heard * * * at a meaningful time and in a meaningful manner,' *Hochhausler*, 76 Ohio St.3d 455 at 459, 668 N.E.2d 457." *Id.* at ¶ 39.

**{¶104}** Pursuant to the Supreme Court's decision in *Hacker*, which we are bound to follow, we overrule Thompkins' arguments that the ACT violates the

separation-of-powers doctrine, his right to a jury trial, and his right to due process.

{¶105} Accordingly, we overrule Thompkins' fifth assignment of error.

CONCLUSION

{¶106} Having overruled Thompkins' five assignments of error, we affirm the trial court's judgment entry of conviction.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.: Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**