OPINION
{¶ 1} This appeal has been brought from a final judgment of the Lake County Court of Common Pleas. Appellant, Jabra I. Deir, seeks the reversal of his conviction on three counts of assaulting a peace officer during the performance of the officer's official duties. For the following reasons, this court concludes that, although the reversal of the basic conviction is unwarranted, the case must be remanded to the trial court for resentencing on all three counts.
 {¶ 2} Our review of the trial transcript indicates that appellant's conviction was based on the following general facts. On the evening of June 21, 2004, appellant was involved in a one-vehicle traffic accident in Concord Township, Lake County, Ohio. Specifically, the pickup truck appellant was driving at that time veered from the roadway as he was approaching a major intersection. Before the truck came to rest, it collided with a street sign and a utility pole. As a result of this accident, appellant sustained certain injuries which were initially treated by paramedics at the scene. Ultimately, he was placed on a backboard and transported to a local hospital.
 {¶ 3} Since the paramedics had arrived at the scene of the accident prior to the arrival of any police officer, appellant could not be questioned about the matter before he was taken to the hospital. However, after conducting a brief investigation of some aspects of the scene, Deputy Robert Izzo of the Lake County Sheriffs Department was dispatched to the hospital to interview appellant. When Deputy Izzo first spoke to him at the facility, appellant was lying on a small bed in a hallway of the emergency room while awaiting treatment. As he began to question appellant about the accident, Deputy Izzo noticed that appellant was exhibiting certain signs of intoxication, including exuding an aroma of alcohol. The officer further noticed that appellant was telling him conflicting versions of what had occurred in the accident.
 {¶ 4} During the course of the conversation, appellant became increasingly belligerent with Deputy Izzo. At one point, appellant ripped up his driver's license and then tossed the pieces at the officer. Because appellant was raising his voice and employing vulgar language in the discussion, hospital employees decided to move him from the hallway to a separate trauma room. Once this move had been completed, Deputy Izzo asked appellant to submit to a test for determining whether he had been driving while under the influence of alcohol. When appellant refused any test, the officer attempted to have him sign the basic "ALS" form stating the legal effect of his refusal. After appellant also refused to sign, Deputy Izzo then contacted the Department and requested assistance in dealing with his hostile behavior.
 {¶ 5} While Deputy Izzo was waiting for other officers to arrive, the hospital staff tried to provide treatment to appellant. Even though he had received some treatment from the paramedics and had been complaining about the aggravation of a preexisting back injury, appellant would not accept any further help for religious reasons. In light of this, after a second officer, Deputy Scott Pruter, had entered the trauma room and had been able to momentarily calm appellant down, the two officers decided to arrest him on the suspicion that he had been operating his vehicle while under the influence. Thus, once appellant had executed the proper release for the hospital, the two officers handcuffed his hands behind his back and began to lead him through the emergency room.
 {¶ 6} As soon as appellant realized that he was being arrested, he again began to use abusive language and raised his voice in speaking to the deputies. In addition to yelling profanities, appellant would state that he was "going to get" the officers for not allowing him to leave the hospital and go home.
 {¶ 7} While Deputies Izzo and Pruter were leading appellant down one of the hallways toward the hospital exit, appellant suddenly slumped against the wall and slid down to the floor so that he could lie partially on his back. In doing so, appellant asserted that he was experiencing pain in his back. Although a nurse then asked if she could assist appellant in any way, he again refused all possible treatment. Instead, he allowed his wife to massage his back for approximately fifteen minutes.
 {¶ 8} During this time frame, a third member of the Lake County Sheriffs Department, Deputy Craig Young, arrived at the hospital to assist with the situation. After permitting appellant's wife to try to alleviate his pain, the deputies agreed that it was necessary to remove him from the hospital because his behavior was quite disruptive. Accordingly, the deputies attempted to get appellant back on his feet. As Deputy Young reached for one of appellant's arms, appellant rolled away from the officer in an attempt to avoid the contact. At that same time, appellant's right leg went up into the air and nearly made contact with Deputy Young's head.
 {¶ 9} Believing that appellant had tried to kick Deputy Young, Deputy Pruter obtained a set of shackles and placed them on appellant's ankles while the other two deputies held him down. Even though appellant was resisting the actions of the deputies, they were ultimately able to get him on his feet and force him to go down the hallway and out one of the entrances to the emergency room. The deputies then walked him to a police car which Deputy Izzo had parked next to the exit.
 {¶ 10} When the deputies placed appellant beside the back door on the passenger side of the police cruiser, his body became extremely rigid. As a result, the deputies had to "kick in" appellant's knees in order to have him sit down on the edge of the back seat of the cruiser. Despite this, the deputies still could not force him to swing his legs into the car so that the door could be shut. In response to this situation, Deputy Young ran over to the other side of the car, opened up the other back door, and tried to grab appellant from behind. However, before Deputy Young could control him, appellant leaned back across the back seat. His legs then came up to his chest and kicked out in the direction of Deputies Pruter and Izzo. The foregoing basic motion by appellant quickly occurred a second time. Although the first kick did not touch either deputy, the second one did hit Deputy Pruter in the right forearm.
 {¶ 11} Immediately after the two kicks, the deputies were able to secure appellant in the back seat and then transport him to the Department. Even while he was being booked that evening, appellant continued to resist the deputies' actions and make statements which were both belligerent and obscene.
 {¶ 12} In light of the nature of appellant's actions throughout the foregoing incident, the three deputies concluded that he had acted intentionally when the three separate kicks had occurred. Consequently, in October 2004, the Lake County Grand Jury returned a three-count indictment against appellant. In regard to the kick which hit Deputy Pruter, appellant was charged with felonious assault under R.C. 2903.11(A). In relation to the other two kicks, he was charged with assault under R.C. 2903.13(A). Each of the three charges also contained the allegation that the victim of each offense had been a peace officer who had been performing his official duties.
 {¶ 13} At the beginning of the underlying case, appellant hired two private attorneys to represent him in the matter. Although these attorneys filed numerous motions in behalf of appellant and fully participated in the case over a seven-month period, they moved the trial court to withdraw as counsel approximately five days before the scheduled date for the trial. As the basis for this motion, the two attorneys asserted that appellant had terminated their services. Furthermore, only three days prior to the trial date, appellant submitted a pro se motion to represent himself. The trial court did not rule upon either motion immediately, and ordered the two attorneys to be present when the trial started on May 31, 2005.
 {¶ 14} At the outset of the trial, the trial court gave appellant an opportunity to explain why he had fired his attorney so close to the trial date. The trial court also asked him a series of questions which were intended to establish whether appellant understood the basic difficulties involved in representing himself. In response, appellant gave a number of conflicting statements as to why he wanted to proceed pro se and whether he had the ability to properly represent himself. At one point during the discussion, appellant stated expressly that he did want to go forward on his own, but he then essentially requested a continuance so that he could hire new counsel.
 {¶ 15} In light of appellant's conflicting statements, the trial court decided to overrule the two pending motions and require the two attorneys to represent him at trial. In support of its decision, the court first emphasized that appellant himself had admitted that he did not believe that he was physically or mentally prepared to represent himself at that time. The court further stated that a continuance would not be granted because appellant had already been given three continuances, and he had waited until three days prior to the fourth trial date to raise the issue of self-representation.
 {¶ 16} Once the "counsel" question had been resolved, appellant's two attorneys moved the trial court to exclude all evidence which the state might seek to present concerning the language he had used during the entire episode, especially the statements he had made to a female officer during the booking process. The attorneys argued that, even if his statements were relevant, their probative value would be outweighed by their clear prejudicial nature. In overruling this motion, the trial court held that evidence pertaining to appellant's abusive and vulgar language would be admissible because it would tend to demonstrate that appellant had acted intentionally in kicking at the officers. The court further held that the statements during booking were sufficiently close temporally to the altercations to warrant their inclusion into evidence.
 {¶ 17} As part of the ensuing trial, the state relied primarily on the testimony of the three deputies. The state also presented the testimony of two security guards and a hospital paramedic. In response, appellant's attorneys tried to elicit testimony from the state's witnesses establishing that the kicks had occurred solely as a result of the back injury he had aggravated during the accident; however, appellant did not submit any separate testimony. Based upon this evidential submission, the jury specifically found appellant not guilty on the charge of felonious assault regarding the kick which actually hit Deputy Pruter, but did find him guilty of the lesser-included offense of assault. As to the other two counts, the jury found appellant guilty of the charged offenses, i.e., assault. Finally, the jury found under all three counts that the victims of each assault had been peace officers.
 {¶ 18} After conducting a separate hearing on sentencing, the trial court concluded that the two offenses pertaining to Deputy Pruter had to be merged. The court then imposed a seventeen-month sentence as to the "Pruter" assaults, and a six-month sentence as to the assault regarding Deputy Young. In addition, the court concluded that these two sentences were to be served consecutively.
 {¶ 19} In now appealing from the trial court's sentencing judgment, appellant has raised the following assignments of error:
 {¶ 20} "[1.] The trial court erred when it sentenced the defendant-appellant to more than the `statutory maximum' sentence based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's state and federal constitutional rights to trial by jury.
 {¶ 21} "[2.] The trial court erred to the prejudice of the defendant-appellant in ordering a term of consecutive imprisonment when the requisite findings under the applicable sentencing statutes were not supported by the facts.
 {¶ 22} "[3.] The trial court violated the defendant-appellant's constitutional right of self-representation as guaranteed by the Sixth
and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 23} "[4.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim. R. 29(A).
 {¶ 24} "[5.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 25} "[6.] The trial court violated the defendant-appellant's constitutional right to due process as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Sections 5
and 10, Article I of the Ohio Constitution when the trial court denied defendant-appellant's motion in limine."
 {¶ 26} The first two assignments in this appeal pertain to the propriety of the sentences which were imposed for the assault convictions. Under the first assignment, appellant contends that the trial court's decision to impose sentences "greater than the minimum" was erroneous because the statutory procedure followed by the trial court in rendering the sentences violated his constitutional right to a jury trial. Appellant has also asserted the foregoing argument in regard to the decision to have his sentences run consecutively. Under his second assignment, he submits that the statutory findings the court made as to the "consecutive" issue were not warranted under the facts of this case.
 {¶ 27} Subsequent to the submission of appellant's merit brief in this case, the Supreme Court of Ohio had an opportunity to consider the constitutionality of judicial fact-finding in the general context of the imposition of a criminal sentence. See State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. In applying Foster to decisions regarding the imposition of a "greater than the minimum" sentence under R.C. 2929.14(B), this court has stated:
 {¶ 28} "In Foster, the Supreme Court held that R.C. 2929.14(B) is unconstitutional for violating the Sixth Amendment because it deprives a defendant of the right to a jury trial, pursuant to Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435, andBlakely v. Washington (2004), 542 U.S. 296, 124 S. Ct. 2531,159 L. Ed. 2d 403.
 {¶ 29} "Further, pursuant to United States v. Booker (2005),543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621, the Supreme Court's remedy was to sever the unconstitutional provisions of the Revised Code, including R.C. 2929.14(B). After severance, judicial factfinding is not required before imposing a sentence within the basic ranges authorized by R.C. 2929.14(A) based on a jury verdict or admission of the defendant.Foster at paragraph two of the syllabus.
 {¶ 30} "Since Foster was released while this case was pending on direct review, appellant's sentence is void, must be vacated, and remanded for resentencing." State v. Martin, 11th Dist. No. 2005-T-0047,2006-Ohio-2499, at ¶ 6-8.
 {¶ 31} The foregoing analysis also applies to the imposition of consecutive sentences under R.C. 2929.14(E). See, e.g., State v.Strickland, 11th Dist. No. 2005-T-0002, 2006-Ohio-2498. Therefore, since the sentences in the instant case were imposed under the statutory scheme which was declared unconstitutional in Foster, appellant is entitled to be resentenced. Furthermore, in light of the fact that it was improper for the trial court to make factual findings in imposing the original sentences, it is unnecessary for this court to review the propriety of those findings at this time. Cf., State v.Bounthisavath, 11th Dist. No. 2005-L-080, 2006-Ohio-2777. To this extent, appellant's first two assignments of error in this appeal have merit.
 {¶ 32} Under his third assignment, appellant argues that the trial court erred in denying his motion to proceed pro se at trial. He contends that, when the trial court questioned him prior to trial as to why he had terminated the legal services of his two attorneys, he unequivocally indicated that he wanted to represent himself. Based on this, he asserts that the trial court was constitutionally obligated to allow him to fire his attorneys and act in his own behalf at trial.
 {¶ 33} As a corollary of the basic Sixth Amendment right to be represented by counsel during a criminal trial, a defendant also has an independent right of self-representation. State v. Boughner (Dec. 17, 1999), 11th Dist. No. 98-G-2161, 1999 Ohio App. LEXIS 6116. In order to proceed under this separate right, a defendant must first voluntarily, knowingly and intelligently waive the basic right to counsel. Id. Such a waiver cannot take place until the trial court has sufficiently inquired as to whether the defendant fully understands the effect of not having counsel at trial. State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 32. However, once the right to self-representation has been invoked and a proper waiver of counsel has occurred, it becomes per se reversible error not to allow a defendant to go forward on his own. Id.
 {¶ 34} As was noted above, the trial court in the instant case based its decision to deny appellant's motion in part upon the fact that three continuances of the trial had already been granted in the matter, and that a fourth continuance might be necessary if he was permitted to proceed pro se. Upon reviewing the relevant case law as to the manner of invoking the right to self-representation, this court holds that the trial court could have predicated its decision solely on the timing of appellant's request. Specifically, it must be noted that the Supreme Court has stated that the right to proceed without counsel must be invoked in a timely manner. In Cassano, at ¶ 40-41, the Supreme Court upheld the denial of a request for self-representation when it was not made until three days prior to trial. See, also, State v. Vrabel,99 Ohio St.3d 184, 2003-Ohio-3193, in which the Supreme Court expressly relied on United States v. Mackovich (C.A.10, 2000), 209 F.3d 1227,1237, a case where the defendant's request to represent himself was made approximately ten days prior to trial.
 {¶ 35} In this instance, our review of the trial record indicates that, when appellant's two attorneys moved to withdraw as counsel, the case had already been pending for nearly seven months. During that entire time period, appellant was represented solely by the two attorneys whom he had hired at the outset of the matter. Furthermore, our review shows that appellant did not give any indication that he desired to represent himself in the case until he filed a pro se motion on the matter on Friday, May 27, 2005. Since the trial was scheduled to begin on Tuesday, May 31, 2005, and the intervening Monday was a legal holiday, appellant's request for self-representation was not made until technically the day before trial. In light of these circumstances, appellant was not entitled to proceed pro se because he failed to invoke his right in a timely fashion prior to trial.
 {¶ 36} As an aside, this court would again note that the trial court's decision to deny the motion to proceed pro se was also predicated upon the court's separate conclusion that appellant had not properly waived his right to be represented by counsel. Without commenting upon the final merits of this aspect of the trial court's holding, we would indicate that our review of the trial transcript readily shows that appellant made a number of conflicting statements to the trial court during this portion of the trial. For example, after the trial court had questioned appellant as to his basic ability to represent himself, appellant made statements which appeared to signal that he did not believe that he was physically and mentally able to represent himself. However, following a brief recess in the case, appellant appeared to state to the court that he had reconsidered the matter and was now prepared to represent himself.
 {¶ 37} In responding to appellant's new statement on the "representation" matter, the trial court essentially stated that it would be basing its ultimate holding on appellant's prior statement concerning his inability to act as his own counsel. As to this point, this court would emphasize that the trial court's response was not proper in this instance. Once appellant had given any indication that he wanted to act as his own counsel during the trial, the trial court should have continued to question him until appellant's statements to the court were unequivocal. Simply stated, if appellant had made a timely request to represent himself, the trial court should have taken every step possible to see if a proper waiver was feasible.
 {¶ 38} Furthermore, we would note that if appellant had submitted his motion in a timely manner and had then properly waived his right to counsel, the trial court was not obligated to grant him an additional continuance in order to prepare for trial. In light of the fact that three continuances had already been given to the defense in this matter, the trial court could have given appellant the option of either proceeding pro se immediately or being represented by his present two attorneys at trial. If appellant had then chosen the first option, the court could have ordered the two attorneys to remain on "standby" so that, if necessary, they could have assisted appellant during the trial.
 {¶ 39} Notwithstanding the foregoing, this court would reiterate that the record before us supports the conclusion that appellant did not assert his motion to proceed pro se in a timely manner prior to the fourth trial date. As was noted above, such a failure constitutes a separate basis for denying a defendant's request to represent himself. Cassano, 2002-Ohio-3751. Therefore, since the trial court did not err in overruling appellant's motion on this basis, the third assignment in this appeal is without merit.
 {¶ 40} In his next assignment, appellant maintains that the trial court erred in overruling his motion for a judgment of acquittal as to all three charges. In regard to the two kicks which did not make contact with the deputies, appellant submits that the evidence of the state was legally insufficient to establish the elements of assault under R.C. 2903.13(A) because there was no showing that he "knowingly" tried to inflict physical harm. As to the kick which actually contacted Deputy Pruter, appellant asserts that the state failed to present any evidence showing that he "recklessly" sought to cause serious physical harm, as is required under R.C. 2903.13(B). In relation to all three kicks, he states that the evidence was such that a reasonable person could only conclude that the motions of his legs were an uncontrollable reaction to the back pain he was suffering.
 {¶ 41} This court would begin our analysis with the "kick" which, according to the state, was directed toward Deputy Young and occurred in the hospital hallway. As part of his testimony, Deputy Young stated that, immediately prior to the kick, appellant was trying to wiggle away so that Deputy Young could not pick him up. Deputy Young also stated that appellant yelled "Fuck You" at him when the kick took place. In addition, the officer specifically testified that the strength of the kick was very forceful. The latter aspect of Deputy Young's testimony was reiterated by Deputy Izzo, who told the jury that the kick appeared to be intentional.
 {¶ 42} Regarding appellant's back pain, a review of the trial transcript verifies that, while the deputies were walking him down the hallway, he was complaining that the use of the handcuffs was causing him significant pain in his back. Nevertheless, there was other evidence from which the jury could have found that any pain he felt at that time was not debilitating. For example, Deputy Young testified that, despite the fact that the deputies had to carry appellant down the hallway because he was not moving his feet, appellant still was able to move freely when the kicks occurred. Similarly, the hospital paramedic testified that the nature of appellant's movements were such that it was apparent that appellant was "pretending" in falling on the floor in the hallway.
 {¶ 43} Finally, this court would note that considerable evidence was submitted indicating that appellant maintained a belligerent attitude toward all three officers during the entire incident. Besides yelling profanities at them, appellant made certain threats that he was "going to get" them for arresting him. Based on this, the jury could have easily inferred that appellant's kicking motion toward Deputy Young was not merely a reflexive reaction to the back pain.
 {¶ 44} As appellant aptly notes in his brief, R.C. 2901.22(B) provides that a person acts "knowingly" when he is aware that his conduct is likely to produce a particular result. In light of the foregoing discussion, this court holds that there was considerable evidence from which a reasonable person could have found that appellant knowingly attempted to inflict physical harm on Deputy Young. As a result, the evidence was sufficient to meet the elements of assault under R.C. 2903.13(A).
 {¶ 45} A similar analysis is also applicable to the first kick made from the back seat of the police cruiser toward Deputy Pruter. Two witnesses at trial described both kicks in the cruiser as "mule" kicks which were done with extreme force. Deputy Pruter stated that appellant did both kicks with the same force which is normally employed to kick out the window of a car. In fact, there was testimony that appellant tried to do just that after the deputies had got him into the cruiser. In addition, we would note that Deputy Pruter testified that the forcefulness of the "cruiser" kicks were such that appellant could not have been in great pain.
 {¶ 46} Appellant asserts that, in lying on his back and bringing his legs up to his chest, he was only trying to "scoot" into the cruiser. As to this point, we would emphasize that Deputy Young testified that, when he tried to grab appellant from the driver's side of the back seat, appellant tried to avoid his grasp. Obviously, if a person was truly trying to "scoot" back into the car, he would not resist assistance in this endeavor. Moreover, the trial transcript shows that the hospital paramedic testified that appellant's acts were not consistent with someone who was trying to "scoot" into the cruiser.
 {¶ 47} When considered in the context of the entire incident, the evidence regarding the first "cruiser" kick was legally sufficient to demonstrate that he knowingly tried to cause physical harm with the kick. Under such circumstances, the second count was properly submitted to the jury for consideration.
 {¶ 48} As to the second "cruiser" kick, the record before us indicates that, even though appellant was charged with felonious assault as to this act, the jury ultimately found him guilty of assault under R.C. 2903.13(B). That provision states that a person commits an assault when he "recklessly" causes actual physical harm to another. Consistent with the foregoing analysis of the evidence, this court further holds that the state was able to satisfy the basic definition of "reckless" under R.C. 2901.22(C); i.e., there was sufficient evidence to demonstrate that, in kicking Deputy Pruter, appellant blatantly disregarded the risk that the kick could cause a particular result. Accordingly, it was likewise proper for this charge to be submitted to the jury.
 {¶ 49} As a general proposition, a trial court does not err in denying a Crim. R. 29 motion for acquittal when the nature of the state's evidence is such that a rational juror could find that all essential elements of the charged offense has been established beyond a reasonable doubt. State v. Perry, 11th Dist. No. 2004-L-077, 2005-Ohio-6894, at ¶ 32. Pursuant to the foregoing discussion, we conclude that the state met this standard as to all three charges in this case. Therefore, since the denial of appellant's acquittal motion was warranted, his fourth assignment fails to establish any error.
 {¶ 50} Under his fifth assignment, appellant argues that the jury verdict was against the manifest weight of the evidence. In support of this argument, appellant raises the same basic issue which was asserted under the prior assignment; i.e., appellant contends that the evidence did not support the finding that he knowingly or recklessly sought to cause physical harm to the deputies. In essence, he submits that the only believable evidence tended to show that his physical movements in regard to the deputies were caused by the aggravation of his back injury.
 {¶ 51} Without restating all of the evidence referenced in our discussion under the prior assignment, this court would note that each deputy's version of the various events were basically consistent with the versions of the other two deputies. Similarly, the general statements of the deputies were corroborated by the testimony of the security guards and the hospital paramedic. Under their collective version of the incident, it was agreed that, although appellant was complaining of pain in his back, this pain was not the cause of appellant's kicking motions toward the three deputies. Instead, the actual cause was appellant's specific intent to harm the deputies based upon his animosity for being the subject of an arrest.
 {¶ 52} Under Ohio law, a criminal conviction cannot be reversed as against the manifest weight of the evidence unless, after reviewing the entire record, the appellate court determines that the trier of fact "lost its way" in weighing the evidence and judging the credibility of the witnesses. State v. Nichols, 11th Dist. No. 2005-L-017,2006-Ohio-2934, at ¶ 58. In applying the foregoing standard to the record in the instant case, this court cannot say that the jury lost its way in finding appellant guilty of all three charges. Therefore, because the jury verdict was not against the manifest weight of the evidence, appellant's fifth assignment of error is not well taken.
 {¶ 53} Under his final assignment, appellant challenges the propriety of the trial court's decision to allow the state to introduce evidence concerning certain obscene statements he made during the course of the incident. Appellant argues that references to these statements should have been excluded from evidence because the probative value of the statements was outweighed by their prejudicial effect.
 {¶ 54} At the outset of our analysis, this court would first note that, in raising this specific issue before us, appellant has focused solely upon the admission of statements he made to a female booking officer following his arrest. However, our review of the trial transcript shows that, when the basic issue was asserted before the trial court, appellant requested that two categories of obscene statements be excluded from evidence: (1) statements he made to the deputies during the basic incident; and (2) statements made to the booking officer.
 {¶ 55} In regard to the first category of statements, the trial court concluded that they were admissible under Evid. R. 404(B) because they would tend to show the state of his mind, i.e., his intent, at the time of the alleged assaults. In support of this conclusion, the trial court emphasized that, since appellant's primary defense to the charges would be that the kicks had been reflexive in nature, his state of mind was a critical issue under the facts of the case. As to the second category, the trial court concluded that, because the "booking" statements had been made immediately after the arrest, the statements to the booking officer would be admissible for the same reason.
 {¶ 56} After considering the nature of appellant's booking statements, this court holds that the legal analysis of the trial court is not persuasive. During his testimony, Deputy Izzo indicated that appellant had made two statements to the female officer while she was trying to complete the booking process. In these two statements, appellant called her a "bitch" and referred to the performance of two vulgar sex acts. For example, in his second statement, appellant stated that he "was going to stick it in [her] ass."
 {¶ 57} As was noted above, in some of his statements at the hospital, appellant said to the arresting officers that he was "going to get" them for not allowing him to go home after his release from the hospital care. In many respects, the statements appellant made to the booking officer were just as threatening as his statements to the arresting officers; i.e., in both sets of statements, appellant threatened to do some form of physical harm. However, unlike the statements to the arresting officers, the statements to the booking officer did not appear to be based upon the performance of her official duties. Instead, the two sexual statements were based upon the simple fact that the booking officer was a female.
 {¶ 58} The trial court concluded that, since the incident before the booking officer took place only a few minutes after the events at the hospital, appellant's statements to her were a continuation of his statements to the arresting officers. If the nature of the two sets of statements were identical, this court would be more apt to find the analysis of the trial court persuasive. As part of his testimony on this point, though, Deputy Izzo did not quote appellant as stating that he planned to sexually attack the female officer in direct response to her official actions in booking him. As a result, his statements to her were attributable to a general state of intoxication, as compared to his animosity to the arresting officers.
 {¶ 59} Pursuant to the foregoing, this court holds that the trial court erred in concluding that the testimony as to appellant's statements to the booking officer was relevant to his state of mind during the events at the hospital. Thus, that testimony was not admissible under Evid. R. 402. Nevertheless, we would again emphasize that the state presented substantial evidence which supported the jury verdict. In addition to the testimony of the three arresting officers, the state called two hospital security guards and a paramedic as witnesses. The testimony of these six witnesses were extremely consistent in regard to the fact that appellant made a number of belligerent and obscene statements as part of the events at the hospital. Furthermore, the extent of the evidence as to the "hospital" statement was quite significant in contrast to the four lines of testimony concerning the statements to the booking officer.
 {¶ 60} Given the state of the record in this case, this court ultimately concludes that the admission of the "booking" statement to the female officer could not have had any effect upon the jury verdict on all three counts. Accordingly, even though the trial court erred in allowing Deputy Izzo to testify as to the statements, this error was harmless. To the extent that appellant's sixth assignment fails to set forth a logical basis for reversing his conviction, it is not well taken.
 {¶ 61} In light of the foregoing analysis, it is the order and judgment of this court that appellant's three convictions for assault are upheld. To this extent, the judgment of the trial court is affirmed in part. However, for the reasons set forth under the first and second assignments of error, appellant's sentence is hereby vacated, and the action is hereby remanded to the trial court for the purpose of conducting further proceedings necessary to impose a new sentence.
WILLIAM M. O'NEILL, J., concurs, DIANE V. GRENDELL, J., concurs in judgment only.