[Cite as *State v. Smith*, 2026-Ohio-1387.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. 25CA23 |
| Plaintiff-Appellee, | : | |
| v. | : | |
| KIRBY SMITH, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | | |

_____
APPEARANCES:
Brian T. Goldberg, Cincinnati, Ohio, for appellant[1].

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Alisa
Turner, Assistant Prosecuting Attorney, Chillicothe, Ohio, for
appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:4-8-26
ABELE, J.

{¶1} This is an appeal from a Ross County Common Pleas
Court judgment of conviction and sentence. Kirby Smith,
defendant below and appellant herein, raises two assignments of
error for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT VIOLATED MR. SMITH'S
> CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION
> BY DENYING HIS REQUEST TO TERMINATE COUNSEL
> AND PROCEED PRO SE."

_____
[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF
MR. SMITH BY DENYING HIS REQUEST FOR A
CONTINUANCE."

{¶2} In May 2022, a Ross County Grand Jury returned an indictment that charged appellant with one count of tampering with evidence in violation of R.C. 2921.12, a third-degree felony. Appellant entered a not guilty plea.

{¶3} On May 24, 2022, Kelsey J. Reno, a public defender, entered an appearance as counsel of record for appellant. On July 18, 2022, Reno filed a motion to withdraw, citing "a major and complete breakdown in communication between Defendant and Counsel, including allegations against Counsel that have caused an irreparable breakdown in the client attorney relationship." On July 21, 2022, appellant filed a pro se request to retain private counsel. On July 25, 2022, the trial court appointed attorney Jeffrey Blosser to represent appellant.

{¶4} At appellant's October 3, 2022 combined plea and sentencing hearing, the trial court conducted a Crim.R. 11 colloquy and advised appellant of his rights and the effects of his decision to plead guilty, reviewed the signed plea form and jury waiver, reviewed the facts and charges, and asked appellant if any drugs, alcohol, or mind-altering substances influenced him. The court reviewed with appellant the constitutional

rights he waived with his plea, including (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require appellee to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination. The court also explained the maximum penalties, postrelease control, and the effect of appellant's already being under the APA's supervision at the time of this offense.  Appellant expressed his understanding and agreement and acknowledged his execution of the written plea form.  Thus, on October 3, 2022 appellant withdrew his not guilty plea and, pursuant to the jointly recommended sentencing agreement, pleaded guilty to the indictment.

{¶5}  During the sentencing portion of the hearing, the trial court considered the record, the parties' statements, the R.C. 2929.11 principles and purposes of sentencing, and the R.C. 2929.12 seriousness and recidivism factors.  The court then sentenced appellant to serve a three-year community control term with specific conditions, including, but not limited to: (1) obey all laws, (2) successfully complete the Franklin County Community-Based Correction Facility program and aftercare, (3) successfully complete the Ross County Intensive Supervision Program and aftercare, (4) successfully complete basic supervision, and (5) pay costs.  Conditions of basic supervision

included, but were not limited to: (1) refrain from possessing or using narcotics or alcohol, (2) refrain from possessing or using weapons, (3) submit to random drug tests, and (4) report monthly to probation. Finally, the court reserved a 36-month prison term.

{¶6} On April 9, 2025, appellee filed a petition for capias that alleged that appellant violated: (1) Term 1, failure to obey federal, state and local laws and ordinances, due to a pending warrant for F4 Failure to Comply, (2) Term 6, refrain from possessing firearms, because officers recovered a stolen firearm and ammunition from the area of a crash involving appellant's car, (3) Term 7, refrain from possessing or using narcotics, because officers found multiple knotted bags containing white powder, orange powder, and orange and blue pills in the car along with appellant's ID, and (4) Term 15, regularly report to probation, because appellant failed to report to probation after January 17, 2025.

{¶7} On May 6, 2025, appellee filed a notification of preliminary hearing and charges and alleged that appellant violated: (1) Term 1 because he has a pending Failure to Comply charge, (2) Term 7 because he tested positive for amphetamines, cocaine, ecstasy, methamphetamine and marijuana on May 6, 2025, and (3) Term 15 (with no explanation). At the May 6, 2025 preliminary hearing on the community-control violation,

appellant appeared with public defenders Alysia Goss and Ariel Eilola, and entered a general denial.

**{¶8}** At the June 9, 2025, final community-control hearing, appellant appeared with public defender Nick Wille. Counsel made an oral motion to dismiss two of the violations. Counsel argued that Term 15 did not include a "to wit" section, and, thus, failed to provide notice to appellant of the manner of violating Term 15 of his community control. The trial court, however, permitted the amendment of the notice to include the "to wit" section. Counsel further sought to dismiss Term 1 because counsel asserted that the reference to a pending charge implicated double jeopardy. The court disagreed, and also referred to a letter appellant sent to the court in which appellant:

> admits that he committed the term fifteen (15) violation. He may not know what that, he it may be illegally insufficient document to tell him that he's being charged with not reporting but I can tell you from the letter that he wrote he is very awell (*sic.*) that he committed that violation in fact he indicates I didn't report, I was using, my dad overdosed uh and died. Um, so I think that. But we'll make copies of this for everybody as well. So let's get a new final hearing date in about a week.

**{¶9}** On June 16, 2025, appellee filed a second notification of preliminary hearing and charges and alleged that appellant violated: (1) Term 1A due to a pending failure to comply (F3), possession (F2), weapons under disability (F3), and receiving

stolen property (F4), and Term 1 B due to two disorderly conduct convictions on January 16, 2025, (2) Term 7 because on May 5, 2025, appellant tested positive for amphetamines, cocaine, ecstasy, methamphetamine, and marijuana, and (3) Term 15 because appellant failed to report to the probation department after January 17, 2025.

{¶10} On June 16, 2025, the trial court held another preliminary hearing on appellant's new community control violation allegations. Counsel Wille appeared on appellant's behalf. At the hearing, the appellee indicated that it would dismiss the previous violations and proceed on the June 16, 2025 violation notification.

{¶11} Ross County Probation Officer Casey Oates testified that appellant faced charges in another case for failure to comply, felony possession, and receiving stolen property. In addition, appellant has two recent convictions from Greenfield, Ohio. Oates also testified that appellant tested positive for amphetamines, cocaine, ecstasy, methamphetamine, and marijuana on May 6, 2025. Finally, Oates indicated that appellant last reported by phone on January 17, 2025. The trial court found probable cause that appellant committed each violation.

{¶12} At appellant's June 23, 2025, final community control hearing, the following conversation occurred:

MR. WILLE: Um, Your Honor it appears we are having a sudden uh breakdown of the attorney client relationship.
THE COURT: Alright.  Are you ready to proceed?
MR. WILLE: I thought I was, I was talking to Mr. Smith, I no longer believe I am ready.  Uh.
THE COURT: Very well.  Mr. Smith you said that there was a breakdown, I assume that's what your quick conversation was, what's the breakdown?
MR. SMITH:  Um, I do not want him representing me.
THE COURT: You wish to proceed without an attorney?
MR. SMITH:  I would wish to have a continuance to hire private counsel.
THE COURT: I've continued this thing twice, you've had the opportunity to . . .
MR. SMITH: (Talkover) Okay then, I, yeah, I'll represent myself.
THE COURT:  Don't interrupt me.
MR. SMITH: (Talkover) I'll represent myself.
THE COURT:  Don't interrupt me again.
MR. SMITH:  Okay.
THE COURT:  You've had several weeks to do that, if you wish to represent yourself, you may do so.
MR. SMITH:  Okay.
THE COURT:  Um, but we are going to have a small conversation about that.
THE COURT:  Um, Mr. Wille, hold on, I'm not releasing you just yet.

**{¶13}** The trial court then held a bench conference where counsel informed the court that appellant had just informed him that counsel could either withdraw or appellant would fire him. The trial court, however, denied the oral motion to discharge counsel and stated, "I specifically find that the request is untimely made.  I cite *State v Casino*, 96 Ohio St. 380, 94 [*State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751] that indicates a request made three (3) days before trial is untimely.  Certainly two (2) seconds before a hearing is

untimely." Although appellant stated that he asked counsel to withdraw the last time they spoke, the court explained:

> I am also doing this to protect you from yourself. Quite frankly I don't think you have the ability to represent yourself well. I would also note that you have pending F3's, F2's, F3's, another F4, and that you may open yourselves up to. . . Mr. Smith, if you don't listen to me, it's just a total waste of time here. Between those four charges, you may open the door for the prosecuting attorney to get into evidence that they may otherwise wouldn't be able to get in, they may further be able to cross-examine you on those cases and get damaging information that may hurt you in the other cases. You don't understand the rules of evidence, you would have no idea if you were setting yourself up for those to happen. Uh, I think it's in your best interest that we keep Mr. Wille on. Having said that, Mr. Wille, is there anything you wish to say before we proceed.

{¶14} Counsel then informed the trial court that one of the disagreements he had with appellant is that appellant requested that counsel move that the trial court did not hold the hearings within the time period set forth in Crim.R. 5, but counsel informed appellant that Crim.R. 5 does not apply to community control violations. The court replied, "That's right. That's exactly why he's not allo[wed], I am not letting him represent himself at this late of the game. He doesn't understand the law let alone the Rules of Evidence, uh, so it's denied." Appellant stated, "So, Criminal Rule 5 doesn't apply." The court replied, "Anything else? . . . I am not going to sit and teach you the law, that's not how this works, you're held to the same

standards as a lawyer.  Quite frankly, you're not one, you think you are, but you're not. . ."

**{¶15}** Ross County Probation Officer Eric Barbee then testified that he had also supervised appellant during this case.  Barbee explained that: (1) appellant's two recent Greenfield disorderly conduct convictions violated Term 1, (2) appellant's positive May 6 drug test for amphetamine, cocaine, ecstasy, methamphetamine, and marijuana violated Term 7, and (3) appellant's failure to report to probation since January 17 violated Term 15.

**{¶16}** After discussion about whether appellant should testify, the trial court assured counsel:

> I will let him avoid any questions about his pending charges as long as he doesn't open the door on it.  If he starts talking about them, then all bets are off. But if he stays away from the pending charges, I'll order the state to stay away from them.

**{¶17}** Appellant testified that the recent Greenfield charges involved "a domestic violence between me and my wife and (inaudible). . . it was dropped to a lower offense of a minor misdemeanor," and said he informed his probation officer about it.  Appellant also stated that his probation officer ordered him to report on Martin Luther King Day, and he "stood out in front of the building for hours until I realized that it was closed because it was a holiday and I called him. . . [and] left a message."  Appellant stated that the Probation Officer Oates

returned his call the following day on January 21. Appellant further testified that he requested Oates to send his drug test to a lab, and "I don't know what they did, but to my knowledge, no they did not." On cross-examination, appellant acknowledged that he did not report to his probation officer in March or April as required.

{¶18} At the close of appellant's testimony, the trial court concluded that appellant violated Term 1B (failure to obey all laws) and Term 15 (failure to report monthly). In allocution, appellant testified that he reported to his probation officer for two years, maintained employment for a year, completed 200 hours of community service, "passed every drug test that they gave me," completed the intensive probation program, "got my license . . . got insurance for the first time in probably ten (10) years, um, I completed substance abuse, I completed CBCF." Appellant argued that he completed "every requirement that they gave me," except restitution. In addition, appellant stated that he has a sick mother that he cares for and six children.

{¶19} The trial court noted that it considered the presentence investigation report, the record, statements of counsel, the principles and purposes of felony sentencing, the seriousness and recidivism factors, and concluded that appellant "is no longer amenable to community control" and that a prison term "is consistent with purposes and principles of felony

sentencing." Thus, the trial court sentenced appellant to: (1) serve the original 36-month prison term (with credit for 267 days served) for tampering with evidence in violation of R.C. 2921.12, (2) serve a discretionary postrelease control term of up to two years, and (3) pay costs. This appeal followed.

I.

{¶20} In his first assignment of error, appellant asserts that the trial court violated his constitutional right to self-representation when it denied his request to terminate counsel and permit him to proceed pro se. Specifically, appellant contends that the trial court should have permitted him to represent himself when, prior to the commencement of the hearing, he unequivocally requested that he be permitted to represent himself.

{¶21} Appellee, on the other hand, contends that appellant did not unequivocally and timely assert his right to represent himself at the June 23, 2025 community control violation final hearing and disposition.

{¶22} On appeal, where a criminal defendant challenges the denial of a tardy request for self-representation, an appellate court will review a trial court's ruling under the abuse of discretion standard. *State v. Vrabel,* 2003-Ohio-3193.

{¶23} The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment Due Process Clause, guarantees a defendant in a state criminal proceeding the constitutional right of self-representation and that he may proceed to defend himself without counsel if he voluntarily, knowingly, and intelligently elects to do so. *State v. Martin*, 2004-Ohio-5471, ¶ 24; *State v. Taylor*, 2002-Ohio-7017, ¶ 45; *State v. Gibson*, 45 Ohio St.2d 366, paragraph one of the syllabus (1976). The right to counsel under the Sixth Amendment to the United States Constitution includes the right to self-representation. *See Faretta v. California*, 422 U.S. 806, 819-821 (1975) (examining the substance and structure of the Sixth Amendment to conclude that the right to self-representation is implied in the panoply of rights granted to criminal defendants); *see also Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942) (the Sixth Amendment right to the assistance of counsel implicitly includes a "correlative right to dispense with a lawyer's help"). "If a trial court denies the right to self-representation when the right has been properly invoked, the denial is per se reversible error." *State v. Neyland*, 2014-Ohio-1914, ¶ 71, citing *State v. Reed*, 74 Ohio St.3d 534, 535 (1996), citing *McKaskle v. Wiggins*, 465 U.S. 168, 177, fn. 8 (1984); *State v. Ahmed,* 2004-Ohio-4190, ¶ 104.

{¶24} A trial court, however, may properly deny an untimely request for self-representation.  *State v. Knuff,* 2024-Ohio-902, ¶ 57; *see also State v. Degenero*, 2016-Ohio-8514, ¶ 14 (11th Dist.), quoting *State v. Deir*, 2006-Ohio-6885, ¶ 34 (11th Dist.) ("a trial court may predicate 'its decision solely on the timing of appellant's request' ").  As appellee points out, the Supreme Court of Ohio recently held, "we have recognized that 'a defendant in a state criminal trial has an independent constitutional right of self-representation and . . . may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.' "  *Knuff* at ¶ 54, quoting *Gibson*, *supra,* 45 Ohio St.2d 366, at paragraph one of the syllabus, citing *Faretta,* 422 U.S. 806.  But this right — called a *Faretta* right — must be " 'timely and unequivocally asserted' " or else it is waived.  *Knuff, id.,* citing *State v. Cassano*, 2002-Ohio-3751, ¶ 38, quoting *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir.1990).

{¶25} The *Knuff* court acknowledged that assertions of the right to self-representation must also be balanced " 'against considerations of judicial delay.' "  *Knuff* at ¶ 55, quoting *United States v. Powell*, 847 F.3d 760, 774 (6th Cir.2017), quoting *United States v. Martin*, 25 F.3d 293, 295-296 (6th Cir.1994).  In fact, "[e]ven a clear request made prior to trial may be denied when it 'is merely a tactic to secure a delay in

the proceeding.' "  *Id.,* quoting *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir.1986).

{¶26} In *Knuff,* the court did not reach the issue of whether the defendant's self-representation request was unequivocal because the court considered the request, made eight days before jury selection began, as untimely and properly denied.  *Knuff* at ¶ 57.  *See, e.g., Neyland, supra,* 2014-Ohio-1914, at ¶ 76 ("[A] request for self-representation can be denied when the request is untimely."); *accord Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 161 (2000) (defendant must make timely assertion of Faretta right).

{¶27} *Knuff* also rejected a bright-line rule that a self-representation motion is timely when it is made "any time before trial."  *Id., supra,* citing *Cassano[2], supra,* 2002-Ohio-3751, at ¶ 40 (defendant's request made three days before trial untimely).  Moreover, the court noted that courts have also found requests similar to Knuff's to be untimely.  *Knuff* at ¶ 61, citing *United States v. Smith*, 413 F.3d 1253, 1281 (10th Cir.2005)(self-

---

[2] We note that the trial court in the case at bar cited *Cassano* for the proposition that seeking self-representation 3 days before trial constitutes an untimely request.  The *Knuff* court observed that in *Cassano v. Shoop,* the United States Court of Appeals for the Sixth Circuit rejected the Ohio Supreme Court's conclusion in *State v. Cassano* that Cassano's self-representation motion was untimely.  *Cassano v. Shoop,* 1 F.4th 458, 474-475 (6th Cir.2021).  However, the *Knuff* court distinguished *State v. Cassano* from *Knuff* because Cassano's self-representation motion, made 3 days before trial, was not his first such motion.  *Knuff, supra,* Fn. 2.

representation motion filed six days before trial untimely), overruled on other grounds by *United States v. Hutchinson*, 573 F.3d 1011 (10th Cir.2009); *People v. Ruiz*, 142 Cal.App.3d 780, 784, 790-791 (1983)(self-representation motion three days before trial untimely). Thus, the court concluded that Knuff's self-representation motion, filed eight days before trial, was untimely. *Id.* at ¶ 64.

**{¶28}** In the case sub judice, appellant argues that he requested self-representation "as timely as he could have." As appellee notes, however, appellee filed appellant's initial community control violation on April 9, 2025, but later dismissed it and filed the newest community control violation on June 16, 2025, one week before the hearing in question. Appellee contends that appellant could have sought to represent himself as early as April. However, even assuming, arguendo, that the date to measure the reasonableness of the request is one week before the hearing, we nevertheless conclude that appellant's self-representation request is untimely.

**{¶29}** Appellant argues, however, that even if his self-representation request is untimely, the trial court should have used its discretion to grant the request. Appellant cites *State v. Tucker,* 2003-Ohio-6056 (1st Dist.) in support. In *Tucker,* the First District held that once a trial has begun, it is within the trial court's discretion whether to grant a

defendant's request for self-representation.  *Id.* at ¶ 16,

citing *Vrabel,* 2003-Ohio-3193, ¶ 53.  The court explained that

in exercising this discretion, a court should consider (1) the

reasons given for the request, (2) the quality of the present

attorney's representation, and (3) the defendant's "prior

proclivity to substitute counsel."  *Id.,* quoting *State v. Reed,*

1996 WL 637830 (1st Dist. Nov. 6, 1996).  In applying this

construct, the First District concluded that Tucker's self-

representation request was neither timely nor unequivocal.

Tucker sought to represent himself "only after the hearing on

the motion to suppress, voir dire, opening statements, and

direct and cross-examination of the first four witnesses for the

dates."  *Id.* at ¶ 17.

{¶30} In the case sub judice, although the present case did

not involve a trial, as appellee points out appellant waited

until the final hearing on his community control violations to

seek to represent himself.  Initially appellant stated that he

wished for a continuance "to hire private counsel."  When the

trial court indicated that it had twice previously continued the

case and that appellant had other opportunities to express this

sentiment, appellant stated, "Okay then, I, yeah, I'll represent

myself."  After appellee pointed out to the trial court and

defense counsel that appellant would be "playing a dangerous

game cause (*sic.*) I will ask him about that other case if he

opens the door to it," the court determined that it would not be in appellant's best interest to discharge his attorney. The court noted the untimeliness of the request and that moving forward with counsel would "protect [appellant] from [himself]."

**{¶31}** In reviewing "the quality of present counsel," appellee points out that counsel had successfully argued against two of the four community control violations, including the illicit drug use, in spite of appellant's letter to the trial court in which he apparently admitted such illegal drug use.

**{¶32}** Finally, with regard to the "defendant's prior proclivity to substitute counsel," appellant argues that there is no "history of Appellant firing appointed counsel and requesting substitute counsel." However, as appellee points out, the record indicates legal representation by multiple attorneys. After the grand jury returned an indictment on May 20, 2022, the trial court on May 24, 2022 appointed Assistant Public Defender Kelsey J. Reno to represent appellant. On July 18, 2022, Reno filed a motion to withdraw and stated: "There has been a major and complete breakdown in communication between Defendant and Counsel, including allegations against Counsel that have caused an irreparable breakdown in the client attorney relationship." On July 21, 2022, appellant filed a hand-written letter with the trial court requesting the court "to grant me a reasonable continuance to obtain private council [*sic.*]." On

July 25, 2022, the trial court permitted Reno to withdraw, appointed Jeffrey Blosser to represent appellant, and granted a continuance. At the Preliminary Hearing on May 6, 2025, Assistant Public Defenders Alysia Goss and Ariel Eilola represented appellant. From the first final scheduled hearing on June 9, 2025, to the final community control violation hearing on June 23, 2025, Assistant Public Defender Nicholas Wille represented appellant. Thus, the record reflects that appellant's actions demonstrated a prior proclivity to substitute counsel.

{¶33} Appellant also cites *State v. Gordon,* 2004-Ohio-2644 (10th Dist.), which observed that when a trial court determines whether to grant a request to proceed pro se made after the commencement of trial, the trial court must balance a defendant's interest in self-representation against the potential disruption of the proceedings already in progress. *Id.* at ¶ 31, citing *Martin*, 25 F.3d at 296 (even where the right to self-representation is clearly invoked, it must be done in a timely manner, and courts will balance the defendant's assertion against considerations of judicial delay). The court noted that Gordon did not seek to represent himself until after two witnesses had been examined, expressed no displeasure with counsel's performance, gave no indication of a desire to proceed pro se until the jury had heard opening statements and witness

testimony, counsel had not previously been aware of Gordon's dissatisfaction, and counsel took steps to remedy the client's stated concerns. *Id.* at ¶ 32. The court concluded that the trial court "was within its discretion to deny defendant's mid-trial request to represent himself." *Id.* Again, we find no support for appellant's position in *Gordon.*

**{¶34}** In *State v. Billiter*, 2025-Ohio-4693 (4th Dist.), we recently considered the timeliness of a request for self-representation:

> Courts typically consider a request for self-representation untimely when the defendant makes the request after the trial has begun. *See Neyland*, 2014-Ohio-1914, at ¶ 77 (the trial court did not err by denying the defendant's request for self-representation as untimely when he did not make the request until right "before the beginning of the trial-phase closing arguments"); *State v. Vrabel*, 2003-Ohio-3193, ¶ 53 ("the trial court did not abuse its discretion and properly refused appellant's request to represent himself after voir dire had been completed and on the first day that evidence was to be presented"); *see, e.g., State v. Barron*, 2024-Ohio-5836, ¶ 31 (2d Dist.) ("request for self-representation was untimely since it was made on the second day of trial in the middle of the State's case-in-chief"); *State v. Beamon*, 2019-Ohio-443, ¶ 16 (12th Dist.) (request for self-representation made on the second day of trial, after the State had nearly completed its case-in-chief, was untimely); *State v. Montgomery*, 2008-Ohio-6077, ¶ 59 (5th Dist.) (request made after the presentation of three witnesses was untimely); *see also Knuff* at ¶ 58 (the trial court properly denied the defendant's request for self-representation as untimely when the defendant made the request eight days before jury selection began).

**{¶35}** *Id.* at ¶ 75. In *Billiter*, we concluded that the trial court properly denied appellant's self-representation request.

When Billiter did not assert the right until the close of evidence, immediately before closing arguments, we concluded that he did not timely assert the right, and the trial court properly denied it on that basis alone. *Billiter* at ¶ 76, citing *Neyland* at ¶ 77; *Degenero*, *supra,* 2016-Ohio-8514, at ¶ 14 (11th Dist.).

**{¶36}** In the case at bar, appellant asserts that the proceeding would have continued unimpeded if the trial court had granted the self-representation request. However, as appellee observes, the court would have been required to engage in an inquiry into whether appellant knowingly, intelligently, and voluntarily waived his right to counsel. *See State v. Simon*, 2021-Ohio-3090 (4th Dist.). Importantly, the trial court explained that, because of appellant's pending felony charges, if he proceeded without counsel, he could open the door for appellee to adduce evidence they would not otherwise be able to, which could damage appellant's ability to defend himself in the pending cases. After this exchange, appellant did not reassert his wish to represent himself again, and the hearing continued.

**{¶37}** Thus, after our review of the record, we conclude that appellant's self-representation request was untimely. *See Neyland*, 2014-Ohio-1914, at ¶ 77 (the trial court did not err by denying the defendant's request for self-representation as untimely when he did not make the request until right "before

the beginning of the trial-phase closing arguments"); *Vrabel*, 2003-Ohio-3193, ¶ 53 ("the trial court did not abuse its discretion and properly refused appellant's request to represent himself after voir dire had been completed and on the first day that evidence was to be presented"); *State v. Barron*, 2024-Ohio-5836, ¶ 31 (2d Dist.) ("request for self-representation was untimely since it was made on the second day of trial in the middle of the State's case-in-chief"); *State v. Beamon*, 2019-Ohio-443, ¶ 16 (12th Dist.) (request for self-representation made on the second day of trial, after the State had nearly completed its case-in-chief, was untimely); *State v. Montgomery*, 2008-Ohio-6077, ¶ 59 (5th Dist.) (request made after the presentation of three witnesses was untimely); *see also Knuff* at ¶ 58 (the trial court properly denied the defendant's request for self-representation as untimely when the defendant made the request eight days before jury selection began). Consequently, we believe that appellant's self-representation request, made at the start of his final community control violation hearing, was untimely and the trial court was within its discretion to deny it.

{¶38} Accordingly, based upon the foregoing reasons we overrule appellant's first assignment of error.

II.

{¶39} In his second assignment of error, appellant asserts that the trial court erred to his prejudice when it denied his request for a continuance.  Appellee, however, contends that: (1) a continuance was unlikely to result in the appearance of private counsel, (2) appellant is not entitled to the counsel of his choice, (3) appellant offered no example of prejudice, and (4) appellant offered no basis for discharge of his court-appointed attorney.

{¶40} In general, "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge.  An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), *State v. Conway,* 2006-Ohio-791, ¶ 147, *State v. Jones*, 91 Ohio St.3d 335, 342 (2001).  " '[A]buse of discretion' [means] an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland*, 2014-Ohio-1966, ¶ 67, quoting *State v. Brady*, 2008-Ohio-4493, ¶ 23; *State v. Stevers,* 2023-Ohio-3050 (4th Dist.).

{¶41} A trial court that considers a motion to continue should "[w]eigh [ ] against any potential prejudice to the defendant * * * concerns such as a court's right to control its

own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger*, 67 Ohio St.2d at 67. Therefore, when evaluating a request for a continuance, a court should also consider, inter alia:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons to whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

**{¶42}** *Id.* at 67-68. While it is a "basic due process right and indeed essential to a fair trial that a defense counsel be afforded the reasonable opportunity to prepare his case," *State v. Sowders*, 4 Ohio St.3d 143, 144 (1983), not every denial of a continuance violates due process. *Ungar*, *supra*, 376 U.S. at 589; *Stevers, supra,* at ¶ 21. This court has held that "nothing requires trial courts to specifically articulate an analysis of each *Unger* factor." *State v. Dickens*, 2009-Ohio-4541, ¶ 13 (4th Dist.); *Fultz v. Fultz,* 2014-Ohio-3344, ¶ 20 (4th Dist.). Further, absent evidence to the contrary, we "must presume that the trial court applied the law [in this case, the *Unger* factors] correctly." *State v. Coombs*, 18 Ohio St.3d 123, 125 (1985); *Hartt v. Munobe*, 67 Ohio St.3d 3, 7 (1993).

**{¶43}** Although appellant argues that the *Unger* factors favor the grant of his continuance request, based on our analysis we

disagree.  First, we point out that the trial court did not specifically deny appellant's pro se oral motion for a continuance made on June 23, 2025, at the start of the final community control hearing.  As appellee notes, the trial court implicitly denied the request by proceeding with the final hearing, with appellant represented by counsel, thereby eliminating any need for a continuance.  Generally, a reviewing court will presume that a lower court overruled a motion on which it did not expressly rule, in instances where it is clear from the record that this is what the lower court intended. *Matter of M.M.E.W.*, 2023-Ohio-2039 (4th Dist.); *State ex rel. The V Cos. v. Marshall,* 81 Ohio St.3d 467, 469 (1998), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.,* 69 Ohio St.3d 217, 223 (1994), and *Newman v. Al Castrucci Ford Sales, Inc.,* 54 Ohio App.3d 166 (1st Dist. 1988).  Thus, we presume that the motion to continue is implicitly overruled.

{¶44} Turning to the *Unger* factors, the first factor is the length of the delay requested.  Appellant requested a continuance at the beginning of the final community control violation hearing.  Appellant did not state a proposed length for the delay he sought via the continuance.  Even if appellant sought a week to retain private counsel, as we held in *Stevers, supra,* at ¶ 23, although a week or two does not necessarily equate to a long delay, appellee arrested appellant on April 9,

2025, filed violations on May 6, 2025 and June 16, 2025, and the final hearing occurred on June 23, 2025. Consequently, appellant had sufficient time to consult with and retain private counsel if he desired to do so. And, again, appellant did not specify a proposed length for the delay he sought with a continuance. This factor weighs in favor of appellee.

{¶45} The second *Unger* factor is whether other continuances had been requested and received. Trial counsel sought a continuance at the June 9, 2025 hearing due to a lack of notice in the violation of Term 15 because the violation notice lacked a "to wit" section. The trial court continued the hearing to June 16, 2025. At the June 23, 2025 final hearing, appellant made the pro se oral motion and stated, "I would wish to have a continuance to hire private counsel." The trial court replied, "I've continued this thing twice, you've had the opportunity to . . . you've had several weeks to do that . . . ." Thus, because the trial court had continued the matter at least once before, this factor weighs in favor of appellee.

{¶46} The third *Unger* factor involves the inconvenience to litigants, witnesses, opposing counsel, and to the court that results from a continuance. Appellant argues that because this was a community control hearing, appellee would not have been prejudiced by a brief continuance. However, that does not diminish the inconvenience if the trial court again continued

the hearing. *See State v. Colley*, 2010-Ohio-4834, ¶ 20 (4th Dist.) (continuance would have inconvenienced court, state, and various witnesses when request made one business day before trial date); *State v. Jones*, 2015-Ohio-5443, ¶ 51 (3d Dist.)(fact witnesses "relatively local" did not diminish inherent inconvenience to the court, state, witnesses, and jury venire); *Stevers, supra,* 2023-Ohio-3050 at ¶ 25 (deputy and parole officer being present as employment requirement does not diminish the inconvenience if the trial court continued the hearing). Therefore, this factor weighs in favor of appellee.

{¶47} The fourth *Unger* factor is whether the requested delay is for legitimate reasons, or is it dilatory, purposeful, or contrived. Appellant contends that he made his request immediately at the start of the hearing and only needed "a very short window" to retain counsel. After going through multiple attorneys, the appellant requested a pro se continuance to retain private counsel only after a disagreement with his appointed counsel over whether Crim.R. 5 applied to community control violation hearings. The trial court, however, did not abuse its discretion when it refused to continue the revocation hearing, especially when revocation is not premised upon information unknown to the defendant. *State v. Harden*, 2002-Ohio-4673 (5th Dist.). This factor weighs in favor of appellee.

**{¶48}** The fifth *Unger* factor is whether the defendant contributed to the circumstances that give rise to the continuance request.  In the case at bar, it is clear that appellant's pro se continuance request resulted from his continual dissatisfaction with various counsel.  This Court has recently observed that the " ' "important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket," ' " and further " ' "a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." ' "  *State v. Thompkins*, 2024-Ohio-4927, ¶ 23 (4th Dist.), quoting *State v. Harmon*, 2005-Ohio-1974, ¶ 32 (4th Dist.), in turn quoting *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *State v. Woodfork,* 2025-Ohio-2786, ¶ 23 (4th Dist.).

**{¶49}** In *State v. Thompkins, supra,* although court-appointed counsel represented Thompkins, Thompkins sought a continuance the morning of trial to substitute his appointed counsel with retained counsel.  *Id.* at ¶ 30.  Newly retained counsel appeared in court on the morning of trial and filed a "notice of conditional substitution of counsel," and "conditioned the motion to be substituted as counsel for Thompkins on the trial court granting the motion for a continuance."  *Id.*  Thompkins argued that his family only obtained the funds required three days prior to the trial, and newly retained counsel argued that

Thompkins "was entitled to representation with counsel of his choice," and that a 30-day continuance was necessary. This court affirmed the trial court's denial of the continuance motion and concluded that the trial court did not abuse its discretion when it denied the motion, and that Thompkins had not been prejudiced by the denial of the motion. *Id.* at ¶ 33-35. We concluded that the continuance request was untimely, that the trial court had granted previous continuances, that retained counsel had previously withdrawn, and that witnesses were present and appointed counsel was ready to proceed. *Id.* at ¶ 34. Similarly, in the case at bar we believe the continuance request is untimely; the trial court previously granted two continuances, appellant's previously retained counsel had withdrawn, as had other attorneys, and witnesses were present, and counsel appeared ready to proceed, apart from the disagreement he had with appellant. As such, this factor weighs in appellee's favor.

{¶50} Finally, the sixth *Unger* factor incorporates any other relevant factors depending on the case's unique facts. A review of the record reveals no additional relevant factors not already considered above, nor does appellant present any. Thus, this factor is neutral.

{¶51} Accordingly, after our review of the record, we do not believe that appellant demonstrated prejudice from the trial

court's denial of his motion to continue, or any possibility that the outcome of the revocation hearing would have been different.

**{¶52}** Therefore, for all the foregoing reasons, we concluded that the trial court's denial of appellant's continuance request did not constitute an abuse of discretion.  Consequently, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.